F. W. BROCKMAN COMMISSION COMPANY, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, June 6, 1916.

1. **JUSTICES' COURTS:** Appeal to Circuit Court: Right to Amend Statement. Under Sec. 7587, R. S. 1909, an amendment to the statement, to supply a deficiency therein, may be made in the circuit court, in a case pending on appeal from a justice's court, when by such amendment substantial justice is promoted; but the assertion of a new item or cause of action, not embraced, or intended to be included, in the original statement, is inhibited.

2. **COMMON CARRIERS:** Conversion: Amendment of Pleading: Departure. The statement, in an action instituted against a carrier in a justice's court, seemed to indicate, in part, that the suit was for articles sold to defendant, but it also alleged that the articles were shipped over defendant's railroad and lost in transit. The statement prayed judgment for the value of the articles, but did not ask for an allowance for interest. After the case had been taken to the circuit court by appeal, plaintiff filed an amended statement, alleging a conversion of the articles, and praying for a recovery for the value of such articles, and interest thereon in a certain amount. *Held,* that the original statement was sufficient to warrant a recovery for a conversion, and that the prayer for an award of interest was not a departure, since the interest was parcel of the original cause of action.

3. ———: Shipment to Order of Consignor: Who Considered Consignee. Where a shipment of goods is consigned to the order of the consignor, with directions to notify a third party at destination, such third party is, under Sec. 3113, R. S. 1909, deemed the consignee and not the agent of the consignor.

4. ———: Refusal of Consignee to Accept Shipment: Duty of Carrier. It is the duty of the carrier to notify the consignor and obtain his directions before selling a shipment that is rejected by the con-

signee, unless the necessity for the sale is so urgent as to relieve it of such duty.

5. ——:——:——: Conversion. Where fruit, which was consigned to the order of the consignor, with directions to notify a third party at destination, was rejected by such third party, the carrier was liable for conversion, in selling the fruit without nctifying the consignor, unless the condition of the fruit was such as to require immediate sale without waiting to give notice to, and receive directions from, the consignor; notice to the third party not being sufficient, since, under Sec. 3113, R. S. 1909, he was deemed the consignee and not the agent of the consignor.

6. ——: Conversion: Limitation of Carrier's Liability: Common Law Rule. At common law, provisions of a shipping contract limiting the liability of a carrier are of no avail where a conversion is shown, as, under such circumstances, the common law immediately creates a new relation between the carrier and the shipper, independent of the contract, and fixes the obligation of the carrier as that of an insurer, in the view that it is deemed to have abandoned the contract of shipment.

7. ——: Interstate Commerce: Conversion: Validity of Limitation of Carriers' Liability: Carmack Amendment. Under the Carmack Amendment (Act June 29, 1906, 34 Stat. at Large, p. 593, 4 U. S. Comp. St. 1913, sec. 8592) to the Interstate Commerce Act (Act Feb. 4, 1887, 24 Stat. at Large, p. 386), a bill of lading for an interstate shipment, stipulating that the loss or damage for which the carrier is liable shall be computed on the basis of the value of the property at the time and place of the shipment, limits the carrier's liability, even in an action against it for conversion of the shipment, so that it would be error to allow a recovery computed upon the value of the shipment at the time and place of the conversion.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur*, Judge.

REVERSED AND REMANDED.

*H. H. Larimore* and *J. F. Green* for appellant.

(1) The court erred in refusing to strike out plaintiff's third amended statement. Sec. 7585, R. S. 1909;

Wehringer v. Ahlmeyer, 23 Mo. App. 280; Brennan v. McMenamy, 78 Mo. App. 130. (2) Defendant's instruction No. 4 should have been given. The shipment was an interstate one, and the contract contained in the bill of lading as to the measure of damages was valid. Hamilton v. Railroad, 177 Mo. App. 145; McElvain v. Railroad, 176 Mo. App. 382; American Mfg. Co. v. Railroad, 174 Mo. App. 484; Miller v. Railroad, 226 U. S. 513; Croninger v. Express Company, 226 U. S. 491.

*Chas. B. Stark,* and *Christian F. Schneider* for respondent.

(1) The court did not err in refusing to strike plaintiff's third amended petition from the files. Sec. 7578, R. S. 1909; Sprague v. Follett, 90 Mo. 547; Wehring v. Ahlemeyer, 23 Mo. App. 280; Newberger v. Friede, 23 Mo. App. 631; Hansen v. Jones, 20 Mo. App. 595; Woods v. Railroad, 20 Mo. App. 600; Jackson v. Fulton, 87 Mo. App. 239; Vaughn v. Railroad, 17 Mo. App. 4; Kincaid v. Griffith, 64 Mo. App. 673; United States, etc. Co. v. Feed. Co., 100 Mo. App. 724, 726; Patchen v. Durrett, 116 Mo. App. 437. (2) It was not error to refuse to give instruction No. 4 asked by defendant. Suit may be *ex contractu* or *ex delicto.* Clark v. Railroad, 64 Mo. 440; Witting v. Railroad, 28 Mo. App. 103; Ibid. 101 Mo. 631. (3) The judgment is for the right party and ought to be sustained. Newberger v. Friede, 23 Mo. App. 639. (4) Right to sell in an emergency. 2 Hutch. on Carriers, par. 787-8; Hull v. Railroad, 60 Mo App. 593.

NORTONI, J.—This is a suit in trover as for conversion. Plaintiff recovered and defendant prosecutes the appeal.

The controversy arises out of a shipment of a carload of peaches over defendant's railroad from Malvern, Arkansas, to St. Louis, Missouri. The suit originated before a justice of the peace and found its way by appeal to the circuit court. In the circuit court an

amended statement of the cause of action was filed, and it is argued the court erred in not striking the amendment from the files, for that it is said it amounts to a departure. On considering the original statement filed before the justice, it in part reflects the thought that the suit is for peaches sold to defendant, but subsequently therein the peaches are itemized as by crates, and the statement avers they were shipped over defendant's road and lost in transit. Obviously one may show a conversion under this statement—that is to say, that the peaches were lost in transit as through conversion on the part of defendant, and the original statement is in every respect sufficient, for it fully advised defendant of the cause of action asserted as by the number of the car in which the shipment was made and the date of the shipment, etc. It would suffice, too, to bar another suit for the same cause of action, and the amendment made in the circuit court appears to relate to the same subject-matter.

There is no doubt that the amended statement sets forth a cause of action as for conversion of the peaches and enough appears in the original statement on that score to warrant the amendment. But the original statement before the justice sought a recovery of $307.20, while the amended statement prays a recovery in the same amount, but includes about $25 more alleged to be interest thereon. It is argued that, because of this, the amendment was not permissible, for that it does not set forth the same cause of action, and none other than that sued upon before the justice.

Section 7587, Revised Statutes 1909, provides that an amendment, on appeal, may be made to supply any deficiency, when, by such amendment, substantial justice shall be promoted, but inhibits the assertion of a new item or cause of action not embraced or intended to be included in the original. It is entirely clear that this amendment relates to the same cause of action, and the additional item of about $25 sought to be recovered, which is interest on the $307.20 originally sued for, evidently falls within the intent of the statute, for it must

be conceded to be parcel of the original cause of action. When considered under the statute authorizing amendments, above referred to, it was evidently the purpose of plaintiff to sue for compensation on the whole of his cause of action. [See Sprague v. Follett, 90 Mo. 547, 2 S. W. 840.] This includes interest thereon, and manifestly such may not be regarded as a new item or cause of action not embraced or intended to be included in the original statement.

Plaintiff is an incorporated commission company in St. Louis. The peaches involved were not consigned to it, but the cause of action in respect of them was assigned to plaintiff. The Hot Springs County Fruit and Truck Growers' Association shipped the peaches on July 28, 1912, over defendant's road to itself, "consignee, notify Newman & Company, St. Louis." The peaches came forward in due time and defendant notified Newman & Company according to the direction of the bill of lading, which had been sent forward to the National Bank of Commerce, with draft attached, for collection. Newman & Company inspected the peaches and declined to accept them. After Newman & Company rejected the peaches, defendant, without notifying the consignor— that is, the Hot Springs County Fruit & Truck Growers' Association—,turned the car over to one Beck for immediate sale. Beck sold the car for $170, within an hour after Newman & Company had rejected it, on the forenoon of the thirty-first of August. In the meantime, the consignor, Hot Springs County Fruit & Truck Growers' Association, learned from Newman & Company that the peaches had been rejected and sent forward one Scruggs to arrange for their sale elsewhere. Scruggs arranged with plaintiff, Brockman Commission Company, to handle the peaches, procured the bill of lading, and Brockman demanded the peaches of defendant; but they had been sold, as before said. The cause of action for the loss of the peaches was assigned to plaintiff, Brockman Commission Company, by the owners, and it appears it elected to sue in tort as for conversion, rather than in *assumpsit,* thereon.

The theory of the case is, that on the peaches, being rejected by Newman & Company, it devolved the duty on defendant to notify the consignor Hot Springs County Fruit & Truck Growers' Association and await directions before selling the same, unless the necessities which inhere in the shipment of perishable freight enjoined the immediate sale of the goods to save them and thus prevented the giving of notice to the consignor. The issue was submitted to the jury in this view and authorized a recovery for plaintiff as for conversion, in the event defendant sold the peaches without first giving notice to the consignor that they had been rejected and giving it an opportunity to direct their disposal, unless the jury found the peaches were in a condition so advanced towards decay that an emergency existed too urgent to allow time without danger of substantial loss to the owner, if defendant went about giving the notice to the consignor and asking for directions.

It is argued that the court erred in its view of the law, for that Newman & Company, the "notify party," disclosed on the bill of lading, was the agent of the consignor, and that notice to such agent must be regarded as notice to the principal. The Hot Springs County Fruit & Truck Growers' Association was the consignor. It was likewise the consignee, according to the terms of the bill of lading, which stipulated for shipment to its order and to notify Newman & Company. This being true, it is said that the notice to Newman & Company was notice to the consignor, in that Newman & Company must be regarded as the agent of the consignor.

Our Statute (section 3113, R. S. 1909) defines and fixes the status of Newman & Company as that of a consignee. The proviso of that section is as follows:

"*Provided, further,* that when consignors ship goods consigned to order, but express in their bills of lading or shipping directions the name of a person at destination whom to notify, it shall be the duty of the railroad company to give such notice to such party in the same manner as if the shipment had been made directly to him."

Under the provisions of this statute, the notice given by the railroad company to Newman & Company must be regarded as notice to a consignee, as in a case where the goods were consigned by one person directly to another. Such being true, Newman & Company may not be regarded as agent of the consignor and the law devolved the duty on defendant to act in the circumstances as if the shipment were made by the Hot Springs County Fruit & Truck Growers' Association, consignor, directly to Newman & Company, as consignee. In such cases, if there be any possible manner of preserving the goods, short of their sale, it must be resorted to by the carrier. "If the owner is at hand," says Mr. Hutchinson, "and can be easily communicated with," it is the duty of the carrier to advise him of the facts and take his directions and where such directions may be obtained there is neither necessity nor authority nor justification for the carrier to assume to sell the goods without notice. [See 2 Hutchinson on Carriers (3 Ed.), section 792.] Here, it appears it was convenient to communicate with the consignor by telegraph and obtain directions as to what should be done with the goods, but defendant omitted to do this. On the contrary, it appears to have turned the fruit over to Beck, its selling agent, for sale immediately upon its rejection by Newman & Company, and Beck says, he sold it probably within an hour thereafter. In this state of the case, the question of defendant's liability depends entirely on the condition of the fruit at the time and the necessity which attended the situation in order to preserve it—that is, as to whether such necessity was so urgent as to relieve defendant of the duty of notifying the consignor before selling the shipment. This question was properly submitted to the jury by instructions given and the fact found on substantial evidence in favor of plaintiff.

Defendant's instruction No. 3 was well enough refused, because it omitted to incorporate and treat with the primary obligation of defendant to notify the consignor before sale, if practicable to do so in the circum-

stances of the case. The case of Hull v. Mo. Pac. R. Co., 60 Mo. App. 593, is not in point, for there the sale was not made until several days after notice was given the consignor for the railroad company by the consignee.

It is argued the court erred in authorizing a recovery as for the reasonable value of the peaches at St. Louis, when the shipping contract stipulates otherwise. The contract of shipment provides:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona-fide invoice price, if any, to the consignee, including the freight charges if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper, or has been agreed upon, or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation."

Such contract provisions are treated as valid and controlling in ordinary suits proceeding on the common-law liability of the carrier for loss, but heretofore they have been regarded as of no avail in suits for conversion. In other words, where a conversion appears, it is said the common law immediately creates a new relation between the parties, independent of the contract, and fixes the obligation of the carrier as that of an insurer, in the view that the carrier is deemed to have abandoned the contract of shipment. In such circumstances the amount to be recovered is in accord with the measure of damages which obtains in conversion, and that is the value of the property, with interest under our statute, if claimed, at the time and place of the conversion. [See People's State Bank v. Missouri, K. & T. R. Co., 192 Mo. App. 614, 178 S. W. 292.] But here a new question arises, perforce of the Federal Statute on interstate commerce. The shipment of peaches involved is interstate in character and a bill of lading in accordance with the Federal act was issued with respect to the same. It is said that, under the Carmack Amendment, the car-

rier takes the goods under the bill of lading issued and its obligations are measured by the terms of the contract under the statute.

The Supreme Court of the United States, in the recent case of Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. Rep. 541, says:

"In this view it necessarily follows that the effect of the stipulation cannot be escaped by the mere form of the action and neither may the parties waive the contract under which the shipment is made pursuant to the Federal act; nor can the carrier by its conduct give the shipper the right to ignore those terms which are applicable to its conduct and hold the carrier to a different responsibility than that fixed under the agreement made in pursuance of the published tariffs and regulations."

The court adds:

"A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed."

The case above referred to is one in trover as for conversion and the argument advanced, to the effect that the conversion operated as an abandonment of the contract, was rejected by the court, in the view, as above stated, that, under the Carmack Amendment, the stipulations contained in the shipping contract are to control whatever may be the form of the action. [Kemper Mill Co. v. Missouri Pac. Ry. Co., 193 Mo. App. 466, 186 S. W. 8.] The shipment involved here being interstate in character, it falls within the purview of the Federal Act and the Carmack Amendment. Therefore, the provision of the bill of lading fixing the basis for the ascertainment of the value of the property at the time and place of shipment, in event of loss, controls, and the court erred in instructing the jury to award compensation according to the value of the property at the time and place of conversion—that is, at St. Louis, Mo.

Because of this, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.