THE CUDAHY PACKING COMPANY, a Corporation, Respondent, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Appellant.

Kansas City Court of Appeals, February 18, 1918.

1. **COMMON CARRIERS: Damages to Meats: Insurers.** A packing company delivered to a railroad company for shipment fresh meats packed in shippers' refrigerator cars with directions to the

carrier for icing in transit. The meat was spoiled when it reached destination. The action was based on the common-law liability of the carrier as an insurer. It was *held* that the verdict of the jury, as to the first count would not be disturbed, but because the bill of lading covering the car involved in the third count contained a provision requiring notice in writing within four months of a claim for damages, which was not given, the verdict on the third count was reversed.

2. ———: **Bills of Lading: Notice of Claim.** The purpose of the provision in a bill of lading requiring notice of a claim for damages is to allow the carrier an opportunity to investigate and either settle the claim or prepare for a contest, and while substantial compliance with such a provision is sufficient, the notice must be one of a *claim* and not merely of a damaged shipment.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

AFFIRMED IN PART. REVERSED IN PART.

*Thomas R. Morrow, Geo. J. Mersereau, John H. Lathrop, Sloane Turgeon* and *J. D. Hamilton* for appellant.

*New, Miller, Camack & Winger, P. E. Reeder* and *John Taylor* for respondent.

BLAND, J.—This suit was brought in three counts. The second count was dismissed. The first count is for damages to a car of fresh meat shipped by plaintiff from Wichita, Kansas, to New York City; the third count is for damages to a car of fresh meat shipped from Wichita, Kansas, to Passaic, N. J. Plaintiff having recovered on both counts, defendant has appealed.

Defendant urges that there was no evidence that the meat was in good condition at the time it was delivered to the defendant at the point of origin, as alleged in the petition. Plaintiff's evidence on this point shows that the meat was branded and packed in the usual way at its packing plant located at Wichita, Kansas; that all meat was inspected by government inspectors immediately before and after is was butchered and when loaded

was again inspected, and this latter inspection included an examination of the interior of the car to see that it was sanitary, properly cleaned, that the doors were closed properly and that the roof was tight; that the government would not allow meat that was not properly inspected and branded to go into the cars; that the manner of preparing a shipment of meat was that cattle, veal and sheep were retained, after being killed, in its packing plant from one to six days before being shipped, so that it would be entirely free from animal heat; that it was then in proper condition for shipment; that pork was shipped two or three days after killed; that under proper refrigeration all meats so shipped would keep for thirty days.

The evidence, although general as to the condition of the meat, shows that it was packed under the general and invariable practice as already detailed, and under the circumstances this evidence was sufficient to show that the meat was properly packed and that it was in good condition at the time it was delivered to the defendant. [Equitable Elevator Co. v. U. P. Ry. Co., 191 S. W. 1067.]

Defendant complains of the refusal by the court to give its instruction No. 15, which sought to tell the jury that if the damage to the meat was caused by the insufficiency of the cars to properly refrigerate or cool the meat, even though defendant followed the icing instructions given by plaintiff in its bill of lading, that is to say, that the cars were not proper refrigeration plants, their verdict should be for the defendant.

These shipments of meat were in sealed cars of plaintiff's own make and choosing, and defendant had nothing to do with the inside thereof except to follow the icing instructions. Defendant introduced evidence tending to show that it followed the icing instructions and that the cars were moved forward without delay. Under these circumstances defendant says that there was evidence that tended to eliminate every possible cause but that the meat spoiled by reason of it not being properly packed.

[Citing Cudahy Packing Co. v. A. T. & S. F. Ry. Co., 193 Mo. App. 572.]

Without passing upon the sufficiency of this evidence, we find that this defense was not pleaded and for that reason the instruction should not have been given. [McCarthy & Baldwin v. Louisville and Nashville R. R. Co., 102 Ala., l. c. 202-203; 10 Corpus Juris., pp. 110 and 373.] However, defendant urges that it pleaded this defense, in that it set up in its answer that the damage to the meat was "due to the condition of the meat or its natural propensity and tendency to decay and spoil," and not due to any act of the defendant or the failure of the defendant to in any way perform its duty as a carrier. We do not think that this allegation includes an allegation that the meat spoiled as a result of an act or fault of the shipper in failing to furnish proper refrigerating cars. If defendant desired to rely on a claim that the meat spoiled on account of such a fault of the shipper, it should have set up this defense in its answer. A defense that the meat spoiled by reason of its inherent qualities does not necessarily include a defense that it spoiled as the result of a fault of the shipper in failing to furnish proper refrigerating cars. Cases can be imagined where the shipper would not be at fault in packing goods and still they would be damaged by reason of defects inherent in them. There is nothing in the case of Cudahy Packing Co. v. A. T. & S. F. Ry. Co., supra, to the effect that a pleading that meat spoiled from its inherent tendency to decay includes an allegation that it decayed because not in proper refrigerating cars. The court in that case was not discussing the question of pleading but the question as to whether the defendant introduced evidence of a circumstantial nature tending to prove that the meat spoiled because not properly packed. The sole question considered in that case was a question of evidence, that is, whether the lower court erred in giving a peremptory instruction in favor of plaintiff when it was claimed that the evidence was conflicting. In the case at bar the court gave an instruction for defendant telling the jury that if the

meat spoiled on account of any natural infirmity of the meat, they should find for defendant.

Nor do we think that a defense that the meat spoil because of being packed in defective refrigerating cars was covered by the general denial. The petition did not allege that the refrigerating cars were proper ones but pleaded that the meat was accepted by defendant in the cars in which it was packed. If defendant chose to accept the cars regardless of whether they were good refrigerating cars, it was privileged to do so, and yet it would be liable. The general denial raised no issue as to the sufficiency of the cars. As defendant did not set it up, that question was not in the pleadings.

Defendant's third point assumes that defendant's liability is based upon negligence. This is an erroneous assumption. Defendant was sued on its common law liability as an insurer. Its liability as a carrier is not based on any theory of negligence but upon the fact that it is an insurer. [Collins v. Denver & Rio Grande Ry. Co., 181 Mo. App. 213; Cudahy Packing Co. v. A. T. & S. F. Ry. Co., supra, l. c. 577-578.]

However, plaintiff is not entitled to recover for damages to the car mentioned in the third count. The bill of lading covering that car contained a provision as follows:

"Claims for loss, damage or delay, must be made in writing to the carrier at the point of delivery or at the point of origin, within four months after delivery of the property or in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carriers shall not be liable."

There was no compliance with this provision of notice. The evidence shows that the meat was delivered by plaintiff to the defendant but that the terminal carrier was the Erie Railroad. When the car arrived at Passiac, N. J., it was inspected by plaintiff's branch manager and the meat contained therein was found to have been spoiled, and the manager immediately called by telephone the local freight agent of the terminal

carrier and notified him of the damaged condition of the meat. Plaintiff's manager and the freight agent together inspected the meat and they both found it damaged and the latter notified in writing this defendant of the damage. So far as the evidence shows nothing was said as to any intention on the part of plaintiff to make any claim for the damage. Plaintiff's manager returned to his office and sent the freight agent the following letter: "This is to confirm our verbal notice of the poor condition of C. R. L. car 3725." There is nothing in this letter mentioning any claim or intended claim of damages. The bill of lading expressly provides that claims for loss or damage must be made in writing and unless such claims are made the carrier shall not be liable. It is well settled that provisions of this nature are binding upon the shipper. [Georgia, Fla. & Ala. Rd. Co. v. Blish Milling Co., 241 U. S. 190; Banaka v. Mo. Pac. Ry. Co., 193 Mo. App. 345; Kemper Milling Co. v. Mo. Pac. Ry. Co., 193 Mo. App. 466; Johnson v. Mo. Pac. Ry. Co., 187 S. W. 282.]

But plaintiff urges that the letter written by its branch manager, taken with all the facts concerning the inspection of the meat by its manager and the local freight agent of the Erie Railroad, shows that it was intended and was understood by the parties that this letter was a notice of claim. As far as the evidence is concerned, there was no mention of any claim, either oral or in writing. If we are permitted to go into the matter of intention, we cannot say that any such intention was indisputably shown. The fact that plaintiff was investigating the cause of the loss does not necessarily mean that it had made up its mind that either of the carriers was at fault. It may have found after a thorough investigation that the carriers were not at fault but that the loss occurred by reason of some fault of plaintiff. The letter may have been written to supply evidence that the meat was in poor condition in case claim was afterwards made.

There is nothing in the evidence of any nature to show whether at the time plaintiff's branch manager

wrote the letter mentioned, plaintiff had determined that the railroad company was at fault. In addition to this, there is nothing to show that the railroad company knew that plaintiff was making a claim for damages when its branch manager wrote the letter mentioned to this defendant. The fact that the freight claim agent wrote this letter to defendant notifying it of the damaged condition of the meat does not show beyond dispute that the freight claim agent took it that plaintiff was making a claim for damages. The evidence does not show that there was anything in the letter mentioning that a claim was contemplated. It might have been that the carriers had a policy of making a partial investigation of a damaged shipment, whether a claim had been made or not, which would not be as thorough or made for the purpose of contesting or settling a claim as if notice, which it had a right to receive under the terms of the bill of lading, were given.

The fact that the freight claim agent knew of the damaged condition of the goods did not dispense with a notice in writing by plaintiff of a claim for damages. The fact that this agent knew these things does not show, as we have already stated, that he knew that a claim would be filed. The purpose of the bill of lading in requiring the filing of notice of a claim is to allow the carrier an opportunity to investigate and either settle the claim or to prepare for its contest. While substantial compliance with the provision for notice of claim for loss is all that is necessary, the notice must be one of a *claim* or *intended claim* and not merely that the shipment was damaged. It is held in Gees Comm. Co. v. Ill. Cent. R. R. Co., 193 Mo. App. l. c. 683, that the provision for notice calls for a notice that a *claim* will be made for the *loss*. The Supreme Court of the United States in St. L., I. M. & S. R. R. Co. v. Starbird, 37 Supreme Ct. Rep. l. c. 468, said:

"It is not difficult for the consignee to comply with a requirement of this kind, and give notice in writing to the agent of the delivering carrier. Such

notice puts in permanent form the evidence of an intention to *claim damages*, and will serve to call the attention of the carrier to the condition of the freight, and enable it to make such investigation as the facts of the require while there is opportunity so to do." (Italics ours).

It is quite plain that the carrier is not protected unless it knows that a *claim* will be filed in addition to knowing that the shipment has been damaged. Unless the carrier knows that a claim will be filed, there would be no occasion for it to prepare to contest or settle it. It was in Johnson v. Mo. Pac. Ry. Co., supra, l. c. 283, that a talk had between the consignee and the station agent in reference to the damage did not constitute even oral notice that a claim would be presented, although if the consignee had informed the station agent orally that a claim would be presented it would not have been a compliance with the terms of the bill of lading.

For these reasons the judgment in favor of plaintiff on the third count of its petition is reversed, but is affirmed as to the first count of its petition. All concur.