THE CUDAHY PACKING COMPANY, Respondent, v. WILLIAM K. BIXBY, FREDERICK A. DELANO and EDWARD B. PRYOR, Receivers of the WABASH RAILWAY COMPANY, Appellants.

Kansas City Court of Appeals, May 20, 1918.

1. **COMMON CARRIERS: Damages: Meats: Shipments.** Where a shipment of meat is damaged and a notice is sent by the shipper to the carrier and the notice specifies the shipment so that the carrier may readily identify it, and such notice also apprises carrier of the character of the claim and discloses that an investigation is necessary and affords opportunity for that to be done, the shipper will be *held* to have complied with the shipping contract, which specifies that the claim must be filed with the carrier at the point of delivery, or at the point of origin, within four months after delivery.

2. ———: ———: ———: Notice. A notice sent by the shipper to the carrier concerning damaged freight is not sufficient, to comply with the provisions of the shipping contract, which specifies that a claim therefor must be filed with the shipper within four months, where no reference is made to damages or loss, much less any claim therefor, and gave no intimation that claim would be filed therefor.

3. ———: ———: ———: ———. As an interstate shipping contract is controlled by considerations having to do with its prime object and general policy of the Interstate Commerce Act, among which is the prevention of discriminations and the establishment of unity of responsibility among all the carriers, dealing with the shipment, a notice of claim for loss given, not at the point of origin or delivery as required, but to the carrier's General Freight Claim Agent elsewhere, is not a substantial compliance with the terms of the shipping contracts. BROWN, J., dissenting.

4. **INSTRUCTIONS: Damages: Measure of.** An instruction giving the measure of damages as the difference between the market value of meat in good condition on arrival at destination, and its reasonable value in the damaged condition is erroneous, where it is contrary to the provisions of the shipping contract regarding such damages.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson,* Judge.

REVERSED IN PART AND REMANDED IN PART.

*New, Miller, Camack & Winger* for respondent.

*Sebree, Conrad & Wendorff* for appellant.

TRIMBLE, J.—This action, under the Carmack Amendment, is in four counts to recover damages to that many carloads of fresh meat respectively shipped from plaintiff's packing plants at Kansas City and South Omaha to Pittsburg, Pa., Atlanta, Ga., New Haven, Conn., and Jacksonville, Fla. The shipments were made in Cudahy Refrigerator Line cars owned and furnished by plaintiff. They were loaded, iced and sealed by plaintiff at its packing plants and delivered to defendant for transporation under what has come to be known as "uniform" bills of lading, which contained instructions to the carrier to re-ice at certain stations, adding 12 per cent salt, and to re-ice oftener if delayed.

The original petition was filed December 26, 1913, but the trial was had upon an amended petition filed September 30, 1914, with a second amended answer thereto, filed September 29, 1916.

In each of said counts the amended petition alleged that the meat of that shipment was loaded in the refrigerator car, properly iced and at the right temperature, and delivered to the carrier in good condition; that the carier received it thus for transportation, issued its bill of lading and undertook the transportation thereof through itself and connecting carriers, but that when the meat was delivered at destination it was decayed and spoiled; wherefore judgment was prayed for the damage to that particular shipment.

We need not notice the defenses made that the damage, if any, was due to the meat's inherent tendency to spoil, or to plaintiff's carelessness in not

properly cooling and icing the cars and removing the animal heat from the meat before loading it into the cars. The reply denied these defenses and the issues thus raised were fought out before the jury and settled by its verdict; and no controversy now exists as to them.

The second amended answer set up as a further defense, the failure to comply with the provision in the bills of lading that claims for loss, damage, or delay must be made in writing to the carrier at point of delivery or at point of origin within four months after delivery, and unless claims were so made, the defendant carrier should not be liable.

As to this defense, the reply set up a lengthy recital of facts, hereinafter referred to, by reason of which it was alleged that defendant was estopped to now defend upon the ground that plaintiff did not literally comply with the exact terms of said provision as to notice. The reply then set up certain other facts and pleaded that, by reason of all the facts so stated, plaintiff had substantially complied with the provision as to notice, and to refuse plaintiff the right to take the verdict of a jury on its right to recover on the causes of action set forth in its petition, would be to deny it the rights and privileges claimed by it under the statutes of the United States and under the findings and orders of the Interstate Commerce Commission made pursuant to said statutes.

A trial was had. The court submitted the case to the jury upon all the issues of fact raised by the pleadings, and the jury returned a verdict in plaintiff's favor upon all four counts, assessing damages on the first at $363.06, on the second at $291.81, on the third at $503.33, and on the fourth at $354.95. Defendant appealed.

The main question is whether the trial court, in ruling on the demurrers to the evidence, should have given prevailing effect to the defense of non-compliance with the clause requiring written claim for loss or damage to be presented to the carrier at point of origin or point of delivery within four months?

For reasons of convenience, we first take up the shipment covered by the second count. It reached Atlanta November 24, 1913. Upon its arrival, plaintiff orally notified the delivering carrier's agent at that place of the spoiled condition of the meat and showed it to him. The next day, November 25, 1915, plaintiff wrote the agent of the terminal carrier at Atlanta, saying—

"Beg to confirm our report to your Mr. Wood yesterday to the effect that car CLR 4836, placed at our branch yesterday afternoon, arrived showing a temperature of 55½ degrees, and that *in consequence of this high temperature,* the *fresh meats* contained in this car *were out of condition,* as we showed your representative who examined these goods. Some of them were in extremely bad condition and will show a considerable loss, all are affected to some extent. Undoubtedly this high tempature *is due to either the car having missed an icing station, or not having been properly iced in transit.* We will handle these goods to the very best possible advantage *and file claim through regular channels covering loss sustained.* Also call your attention to the fact that this car arrived at 4 a. m. and was not placed at our warehouse until 2 o'clock in the afternoon. Think it would be well for you to investigate and explain cause of this delay in placing the car."

In addition to this letter, plaintiff, on March 23, 1914, or three months and twenty-nine days after delivery of the shipment, mailed in Chicage to defendant's Freight Claim Agent in St. Louis a formal written claim for loss thereon, minutely specifying the details involved therein. This formal written claim, even if we can say it reached the Freight Claim Agent the next day, March 25 (which would be the last day of the four months under the rule which excludes the first but includes the last day), was not made at the point of origin or at the point of delivery, but as stated, was made upon defendant's Freight Claim Agent at St. Louis; and, on this account, was clearly

not a *strict* compliance with the requirements of the four months clause. [Equity Elevator Co. v. Union Pacific Ry. Co., 177 S. W. 773; Watson v. Union Pacific Ry. Co., 178 S. W. 871;] We will not at this time go into the plaintiff's contentions as to the efficacy of this formal claim because of the facts set up by, and proved under, the reply; but will deal with those matters in connection with the shipments in the other counts. What we here consider is whether or not plaintiff's letter to the carrier at the point of delivery, the next day after the shipment's arrival, was a substantial compliance with the contract? It will be noticed that the letter specified the particular car and said the shipment was *damaged* and and in bad condition *because of high temperature, due* either to the car having *missed an icing station* or *not having been properly iced in transit,* and that *claim for loss would be filed* through the regular channels. The letter also called attention to the delay from 4 a. m. to 2 p. m. in setting the car at the warehouse for unloading and suggested an investigation into the same, besides telling the carrier that its representative had been shown the goods and their condition.

The purpose of the shipping contract in requiring that a claim for loss be made is ''to give the carrier a fair opportunity to investigate the merits of the alleged loss so that unjust claims may be thwarted; to give the carrier an opportunity to investigate the merits of the claim when the facts are fresh and the information is readily obtainable.'' [Gees Commission Co. v. Illinois Central R. Co., 193 Mo. App.677, 680.] It is ''to allow the carrier an opportunity to investigate and either settle the claim or to prepare for its contest.'' [Cudahy Packing Co. v. Atchison, Topeka, etc., R. Co., 198 Mo. App. 520, 201 S. W. 623.] ''The purpose of the stipulation is not to escape liability but to facilitate prompt investigation.'' [Georgia, Florida, etc., R. Co. v. Blish.

199 M. A.—38.

Milling Co., 241 U. S. 190, 196.] In the case last
cited, the stipulation in the shipping contract is iden-
tical with the one here involved. In that case, the
traffic manager of the delivering carrier telegraphed
the shipper that the shipment was refused on ac-
count of damage. The shipper asked the nature
thereof, and the manager replied that it was
slightly damaged by water and rough handling. Af-
ter the shipper's representative had had an oppor-
tunity to examine the condition of the shipment, the
shipper sent a final telegram saying: "We will make
claim against railroad for entire contents of car at
invoice price." The State court held that no notice
of claim was given but that the stipulation in the
bill of lading was inapplicable. The Supreme Court
of the United States held that the stipulation was ap-
plicable, but that the provision in the shipping con-
tract should not be construed "as requiring a more
formal notice than that which was actually sent;"
that the previous communications adequately identified
the shipment, "so that this final telegram taken with
the others established beyond question the particular
shipment to which the claim referred and was *in sub-
stance the making of a claim* within the meaning of
the stipulation,—the object of which was to secure rea-
sonable notice." (Italics ours). The court further
said that the stipulation in the shipping contract "does
not require documents in a particular form. It is
addressed to a practical exigency and is to be con-
strued in a practical way."

It is true, the letter in the case at bar says the
shipper "*will* file claim;" and in Kidwell v. Oregon
Short Line, 208 Fed 1, l. c. 3, the U. S. Circuit Court
of Appeals said that "to impart the information that
a claim will be presented is not to present a claim."
But it was there speaking of an *oral* claim or of a
claim which did not inform the carrier of either the
nature, extent, amount or cause of damage nor afford
any definite facts upon which an investigation might

be had nor which showed that one was required. Even if this last decision may be regarded as construing the stipulation for notice in the shipping contract as "requiring a more formal notice" than the letter in the case at bar, yet the U. S. Supreme Court does not construe the stipulation as requiring such exact nicety and definite formality as is involved in the presentation of a bill for the damage. If the notice specifies the shipment, so that the carrier may readily identify it, and apprises the carrier of "the character of the claim" and discloses that an investigation is necessary and affords opportunity for that to be done, it is sufficient. Besides, the notice in the Blish case, as in the one at bar, said "we will make claim." As bearing on the view that the Supreme Court of the United States gives to this stipulation in shipping contracts a reasonable and practical, rather than a *technical,* construction, see, also, St. Louis Iron Mountain, etc., R. Co. v. Starbird, 243 U. S. 592.

Considering the object and purpose of the stipulation in the shipping contract, that it is to facilitate prompt investigation and is not for the purpose of affording a shield to the carrier whereby it can escape liability for the violation of its duty as a carrier, we are of the opinion that the letter to the delivering carrier in the shipment covered by the second count was a substantial compliance with the requirement of the shipping contract.

The shipment covered by the third count arrived at New Haven July 9, 1912, and the next day, July 10, 1912, plaintiff wrote the agent of the delivering carrier the following,—

"C R L Car 4524, shipped from Kansas City, 7/3/12, arrived 7/9/12, at 10.00 a. m. Upon unloading contents we discovered same to be soft and smeary. We notified your office and your agent Mr. Coffey called and inspected same. Kindly mail us report on same that we may complete our records."

In addition to this letter, plaintiff, on December 29, 1912, sent defendant's Freight Claim Agent at

St. Louis a formal written claim for loss on said shipment.

This formal written claim was not sent within the four months, and hence, even if, under the peculiar facts set up by plaintiff it was not rendered ineffective because not made at the place specified in the contract, nevertheless, it cannot be regarded as a compliance with the contract as to notice. Nor can the letter in reference to this shipment be deemed a substantial compliance therewith. [Cudahy Packing Co. v. Atchison Topeka, etc., R. Co., 198 Mo. App. 520, 201 S. W. 623.] It made no reference whatever to any *damage* or *loss,* much less any claim therefor, and gave no intimation that a claim would be filed, but merely said the shipment was ''soft and smeary,'' without expressing even a hint that the carrier was to blame, and closed by requesting a report on same so that the shipper might complete its records. The carrier was not informed of any loss or damage, was not notified that it was held liable therefor, or that an investigation was necessary to protect itself. For all that the letter contains, the shipper may have regarded itself as being to blame and merely wanted a report from the carrier to assist the shipper in its investigations. For the above reasons, we think the trial court should have sustained defendant's demurrer to the evidence in support of the third count.

With reference to the first and fourth counts, no written claims of any nature were presented to the carrier either at point of origin or at point of delivery. The shipment covered by the first count arrived at Pittsburgh, its destination, on August 12, 1912. On November 23, 1912, within four months after delivery, a written claim, specific in detail and elaborate in form, was sent to defendant's Freight Claim Agent at St. Louis. The shipment in the fourth count arrived at its destination, Jacksonville, May 28, 1912, and on September 27, 1912, or three months and twenty-nine days after delivery of the property, plaintiff mailed, in Chicago, to defendant's

Freight Claim Agent in St. Louis, a formal written claim for loss thereon.

Assuming, but without deciding, that proof of the proper mailing of a correctly addressed letter in Chicago on one day is sufficient to raise the presumption that it was received by the addressee in St. Louis on the next day (and hence was within four months), we take up plaintiff's contention that, owing to the facts, the sending of such claim to the Freight Claim Agent at St. Louis instead of to the carrier either at the point of origin or at the point of destination, was a compliance, or at least a substantial compliance, with the terms of the contract.

Up to the time these shipments were made, the rights, obligations and liabilities of the parties to interstate shipping contracts under the Commerce Act had not been construed and determined as they have been since, and were not as well known. At that time little or no attention was being paid by either shipper or carrier to the provisions affecting liability under such contracts, claims being decided and settled upon their merits whether presented in strict accordance with the terms of the contract or not. After the decision in the Croninger case, 226 U. S. 491, announced January 6, 1913, the Interstate Commerce Commission, upon application of a large number of shippers, among whom was the defendant, filed an opinion on February 9, 1914, known as Order or Ruling No. 4844, wherein the Commission recommended that the carriers deal with all claims presented prior to December 1, 1913, upon their merits without discrimination with respect to the rule in regard to the time within which they should be presented. Afterwards, the Commission, in Conference Ruling No. 456, made June 1, 1914, announced that in its view the provision in the uniform bill of lading requiring claims for loss to be made within four months "is legally complied with" when the shipper "files with the agent of the carrier, either at the point of origin or at the point of delivery of the shipment,

*or with the general claims department of the carrier* a claim *or a written notice of intended claim* describing the shipment with reasonable definiteness. On June 21, 1917, by Conference Ruling No. 510, the Commission expressed the same view with reference to any provision requiring that claims must be made in writing "within a specified period." The plaintiff set up in its reply the above recited facts and these so called Orders or Rulings, and says that as the Interstate Commerce Commission is the administrative body having in charge the enforcement of the Federal Act, its opinion "is entitled to weight," in the determination of the question whether a presentation of the claim to the Freight Claim Agent was a substantial compliance with the contract. The Supreme Court of the United States, in Boston & Maine Railroad v. Hooker, 233 U. S. 97, 118, did say the action of the Commission was "entitled to weight" but it was speaking of a regulation the Commission had made outside of, and uncontrolled by, any of the terms or provisions of the contract. So, also, the Supreme Court, in the cases of New York, New Haven, etc., R. Co. v. Interstate Commerce Com., 200 U. S. 361, Texas and Pacific Ry. Co. v. Abilene Cotton Co., 204 U. S. 426, and Robinson v. Baltimore, etc., R. Co., 222 U. S. 506, held that the Commission has power to make rules and regulations under which interstate commerce may be transacted and the requirements of the Commerce Act carried out. But clearly the Interstate Commerce Commission was not given the power to change the terms of a lawful contract entered into between the shipper and carrier, or to say that one thing may be substituted for another as sufficient performance of the conditions of the contract. Nor do we understand that the Commission in the above Rulings attempted to do any of these things or to "order" the carrier to accept such substitution in lieu of the contractual requirement. All that the Rulings mean is that the carriers could do so if they

chose, and if they did, the Commission would not regard them as violating its rules and regulations.

But plaintiff further says that the defense of noncompliance with the provision for notice was not set up until the second amended answer was filed, and defendant had up to that time permitted plaintiff to expend a large amount of costs in preparing for trial with no knowledge or intimation that such a defense would be interposed; furthermore, that all claims theretofore had been filed with the Freight Claim Agent and they had received consideration at his hands and many of them paid; that he was the defendant's officer in general charge of all such claims and who had the direction and control of them as to whether they should be paid or not; and that the defendant had requested plaintiff to file claims with him. By reason of all these matters plaintiff contends that defendant is now estopped to defend upon the ground of failure to make claim in the manner specified in the contract. It is to be observed, however, that with reference to plaintiff's contention that defendant requested it to file claims with the Freight Claim Agent, the evidence shows nothing more than that plaintiff's assistant manager was requested '(by some one, not stated whom), to file the claim concerning the shipment in the first count with the Freight Claim Agent. It will also be noticed that the rights and liabilities of the parties had accrued and become fixed under the contract before any of the aforesaid rulings by the Commerce Commission had been made.

Plaintiff also contends that by reason of all the foregoing facts, and since the Freight Claim Agent in St. Louis was the man in general charge of all such claims and to whom they would be eventually referred for consideration, the filing of said claims with him should be regarded as a substantial compliance with the contract. It may be also observed that even if the Freight Claim Agent is the man to whom claims are finally referred for disposition, yet it may well be an important matter that the investi-

gation of the claim be begun at one or the other of the two places specified in the contract, so that these agents and employees, locally convenient and perhaps more fully acquainted with the facts, may attend thereto at once and within the time required, and the claim may then come to the Claim Agent accompanied by the report of these local and convenient investigators. Consequently, the requirement that the claim must be presented at one or the other of the places specified is not a meaningless or an unimportant matter.

In considering the foregoing contentions of plaintiff, we must keep in mind the nature of the contract involved. It is not the same as the ordinary private contract with which no one except the immediate parties, is concerned. It is an interstate shipping contract, made under and pursuant to the National Commerce Act, and, therefore, must be regarded, construed and enforced in the light of that Act and in view of the broad governmental policies it was designed to set up and enforce. The Federal Act makes the initial carrier responsible for the entire transportation, and seeks to establish "unity of responsibility" and, under that Act, the shipping contract "is not to be construed one way with respect to the initial carrier and in another with respect to the connecting carrier." [Georgia, etc., R. Co. v. Blish Milling Co., 241 U. S. l. c. 196.] In other words, as we understand it, the contract under the Federal act must be construed in the same way whether liability is sought of either the originating, intermediate, or terminal carrier. If, now, we say that, because of the conduct of *one* of them in inducing the shipper to ignore some of the terms of the contract, liability may be enforced against *that one,* then we are destroying the "unity of responsibility" which the Federal Act sought to create. For, obviously the terminal carrier, had it been sued, would not be bound by any outside agreement or conduct on the part of the initial carrier. Hence, under the view contended for by plaintiff, it could recover of the initial carrier but,

upon precisely the same facts, could not recover of the terminal carrier. The subject-matter of the contract is regulated by the Federal Act in the interest of the public welfare, and to prevent discrimination in every form and by whatever means or device the same may be rendered possible. [Phillips v. Grand Trunk Ry., 236 U. S. 662; Banaka v. Missouri Pac. Ry. Co., 193 Mo. App. 345.] The bill of lading in an interstate shipment must be regarded as containing "the entire contract upon which the responsibilities of the parties rest." [St. Louis, Iron Mountain, etc., R. Co. v. Starbird, 243 U. S. 592, 597.] And the parties "could not waive the terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore those terms." [Georgia, Flordia, etc., Ry. Co. v. Blish Milling Co., supra.]

In view of these authorities and the nature of the contract, controlled as it is by considerations having to do with the prime object and general policy of the Commerce Act, we are of the opinion that plaintiff cannot claim a substantial performance of the contract either in fact or by way of estoppel. Hence, the demurrers to the first and fourth counts should have been sustained.

It is claimed that the testimony was unsatisfactory and insufficient to enable the jury to form an estimate of the damages sustained; and since the right to recover on the second count is upheld, this contention must be noted. We have examined the evidence in relation to that shipment and find that it was sufficient and hence overrule the contention.

Finally it is claimed that instruction D, with reference to the measure of damages, is erroneous. It authorized the jury, in assessing damages on the second count, if they found for plaintiff and found damages thereon, to take the difference between the reasonable market value of the meat at Atlanta, at the time of delivery, if it had been in good condition, and its reasonable value at that time and place in

its damaged condition, not to exceed however the value of the meat at the point and on the day of shipment and not to exceed the sum demanded in said second count. The bill of lading contains the following clause,—

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona-fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

In the cases of Funsten Dried Fruit, etc., Co. v. Toledo, St. Louis, etc., R. Co., 163 Mo. App. 426, and Brockman Commission Co. v. Missouri Pac. Ry. Co., 188 S. W. 920, the St. Louis Court of Appeals held such an instruction to be erroneous. The opinion in the case of New York, etc., R. Co. v. Peninsula Produce Exchange, 240 U. S. 34, seems to hold that the above stipulation is not to be construed as furnishing a basis of liability but merely as limiting the amount of recovery to the value of the property at the place and time of shipment. It will be noted, however, that the court in speaking of this matter is saying that the State court, from which the case came on writ of error to the Supreme Court, so construed the provision, and that under the evidence in that case there was no error in the instructions. The question of whether the clause in the bill of lading changed the ordinary rule governing the ascertainment of damages seems not to have been gone into further than that. It will be noticed too that on page 41 of said opinion, the court says the State court conceded the instructions were erroneous. However, in the case of Gulf, Colorado & Santa Fe Ry Co. v. Texas Pack-

ing Co., 244 U. S. 31, the Supreme Court said the invoice price at time and place of shipment was the value of the property at such time and place, namely, $22,238.56. The trial court instructed the jury that in assessing damages they would take the difference between the invoice price, $22,238.56, and the value of the shipment at the time it was delivered. The stipulation in the bill of lading was the same as in the case at bar. The court on page 37 say:—

"Apart from the stipulation of these bills of lading, the ordinary measure of damages in cases of this sort is the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the condition in which, by reason of the fault of the carrier, it did arrive. [New York, Lake Erie & Western R. R. Co. v. Estill, 147 U. S. 591, 616.] The stipulations of these bills of lading changed this rule in the requirement that the invoice price at the place of shipment should be the basis for assessing the damages."

The ordinary rule for the measurement of damages to a shipment injured in transit having been changed by the above quoted clause in the shipping contract, and it being valid and enforceable, the instruction D was erroneous in that it gave the jury an improper standard by which to measure the damages. We cannot say from the state of the evidence that the error was harmless. Hence, the judgment on this count must be reversed and remanded for a new trial.

It follows as a result of the foregoing views that the judgment on the second count should be reversed and remanded for a new trial, and the judgment on the first, third, and fourth counts should be reversed without remanding. It is so ordered. All concur. *Ellison, P. J.,* concurs. *Bland, J.,* concurs in part but dissents as to the part holding that notice to the Freight Claims Agent did not constitute substantial compliance.