ABRAHAM A. BRONSTEIN ET AL., TRADING AS A. BRONSTEIN & SONS,

*vs.*

JOHN BARTON PAYNE, DIRECTOR GENERAL OF RAILROADS, OPERATING THE BALTIMORE & OHIO RAILROAD.

*Bill of Lading—Federal Statute—Filing Claim for Loss—Waiver of Delay.*

In the case of a bill of lading issued pursuant to the authority of the Interstate Commerce Act and the amendments thereof, its force and the nature and extent of the obligations created by it are Federal questions, in passing on which the construction placed by the United States Supreme Court upon those laws and things done pursuant to the authority thereof is to be accepted as final.                              pp. 119, 120

A provision in a bill of lading, issued pursuant to the Interstate Commerce Act and amendments thereof, limiting the time for filing a claim for loss, cannot be waived by the carrier, nor can it estop itself from taking advantage thereof.          p. 120

A letter from a shipper to the carrier, requesting the latter to locate certain goods not received, does not, together with the bill of lading and paid freight bill, constitute a written claim for the loss of such goods, within the provision of a bill of lading requiring such a claim to be made within a limited time.
pp. 122, 123

*Decided March 2nd, 1921.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Joseph Fax,* submitting the cause on brief, for the appellants.

*Duncan K. Brent,* with whom was *Allen S. Bowie* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court of Baltimore City, entered in an action brought by the appellants against the appellee to recover the value of a bale of woolen rags which had been delivered by the appellants to the appellee and by it accepted for transportation from Baltimore to New York, where it was to have been delivered to designated consignees, but which in fact was never delivered.

It was conceded that the carrier had received the goods from the shipper, that it lost them, and that neither the shipper nor his consignee received either the goods or their value, but the appellee refused to pay for them on the ground that no written claim for damages had been filed within the time limited by the bill of lading under which they were shipped. Whether, under the circumstances of the case, that defense should have been allowed, is the sole question we are called upon to consider upon this appeal.

The facts, which are not in dispute, may be thus stated: On April 24th, 1918, the appellants shipped, over the B. & O. R. R., nine bales of rags to L. Leibowitz & Sons Co., 69 Mercier Street, New York, and received a standard bill of lading covering the shipment, which among its other provisions contained this, that is:

> "Except where the loss, damage or injury complained of is due to delay or damage while being loaded or unloaded or damaged in transit by carelessness or negligence, as conditions precedent to recovery claims must be made in writing to the originating or delivering carrier within six months after delivery of the property * * * , or in case of failure to make delivery then within six months * * * after a reasonable time for delivery has elapsed."

Of the nine bales so shipped only eight were delivered, and on June 4th, 1918, Leibowitz & Company, the consignee, wrote the "B. & O. Railroad Company, Pier 22, North River, New York," a letter reading as follows:

"Please find B/L and paid freight bill for nine compressed bales of rags, of which we only received eight. Kindly trace the bale that's short and acknowledge the receipt of this letter and enclosures."

This letter was not acknowledged then, and the bill of lading and freight bill inclosed with it were mislaid by the appellee, and although the consignee's representative went three or four times to the appellee to get those papers back, "to file a claim for the monetary value of the 1st bale," they were not returned until some time in January, 1919, and on January 16th, in connection with their return, the appellee sent Leibowitz the following letter, to wit:

"This is to acknowledge receipt of the original bill of lading and paid freight bill covering shipment of 9 bales of compressed rags, covered by our Pro-M-9902, April 20, 1918, delivered to us on June 4th for the purpose of tracing 1 bale which checked short.

"These documents later delivered to you on January 14th, 1919, for the purpose of filing claim."

After receiving these papers the appellants on January 15th, 1919, filed their claim with the appellee for the monetary value of the bale, in which its value was stated to be 1070 lbs. at 35½ cents a pound, which with the freight paid to the defendant, aggregated $381.85.

The appellants knew the value of the bale of rags at the time it was lost, and also knew then exactly how much money they had lost.

On January 22nd the appellee notified the appellants that the claim would not be considered, because it had not been filed within six months after a reasonable time for delivery had elapsed, as required by the bill of lading. A reasonable time for the transportation of less than carload shipments from Baltimore to New York at that time was from seventy-two hours to seven days, although there may have been instances in which more time was taken.

In the following September, the appellants, having received neither the goods nor compensation for the loss of them, brought this action to recover the value thereof.

The case was tried before the court sitting as a jury, and at the conclusion of all the testimony each side offered one prayer. The plaintiffs' prayer was refused and the defendant's prayer granted. The ruling of the court in respect to these prayers is the subject of the only exception presented by the record.

In granting the defendant's prayer, the court in effect ruled that, if the plaintiffs failed to file with the defendant their written claim for compensation for the loss of the goods in question within six months after a reasonable time for delivery of said goods at New York City had elapsed, its verdict should be for the defendant. The legal proposition thus stated is in our opinion correct, and the only objection which could have been urged to the prayer was that it ignored the testimony tending to show that the carrier had waived the requirements of the bill of lading covering the shipment, or had by its conduct estopped itself from asserting them, but if the carrier could neither waive those provisions nor estop itself from asserting them, there was no occasion to refer to the evidence relating to waiver or estoppel. The question therefore is, could the carrier estop itself from asserting the provisions of the bill of lading or waive the right to take advantage thereof.

The shipment in this case was made under and was subject to the federal statutes relating to interstate commerce, and the bill of lading was described as the "standard bill of lading," and was issued pursuant to the authority of the Interstate Commerce Act and the amendments thereof. Its force and the nature and extent of the obligations created by it are federal questions, and in passing upon them we are bound to accept as final the construction and the interpretation placed by the United States Supreme Court upon those laws and things done pursuant to the authority thereof. This Court decided January 13, 1914, that provisions similar to those

in the bill of lading under consideration could be waived. *Peninsula Prod. Exch.* v. *N. Y., P. & N. R. R.,* 122 Md. 231. That decision rested upon what then was the weight of authority, and upon principles of natural justice, and until the question had been finally settled by the Supreme Court of the United States, we were bound by it. The question, however, did come before the Supreme Court in the case of *The Georgia, Florida & Alabama R. R. Co.* v. *Blish Milling Company,* 241 U. S. 190, where it was decided that "the parties could not waive" the provisions of such a bill of lading nor could "the carrier by its conduct give the shipper the right" to ignore them, and in *Texas Pac. R. Co.* v. *Leatherwood,* 250 U. S. 478, the court again stated and emphasized the proposition that a common carrier engaged in interstate transportation could not by its conduct estop itself from asserting the provisions of a bill of lading issued under the authority of the Interstate Commerce Act in reference to the relative rights and obligations of the carrier and the shipper in respect to any shipment covered by such a bill of lading. These decisions appear to rest upon the theory that in order to support the policy of the statutes to which we have referred, the terms and provisions of bills of lading issued in pursuance of the authority contained in them must be regarded as the final and exclusive expression of the parties to such bills of lading in regard to their relative rights and obligations arising or existing in reference to the shipment covered by the bill of lading, and that all other considerations should be subordinated to that end, that is to making effective the policy of the Interstate Commerce Act. These decisions conclude the question under consideration, for where a question is federal in its nature, the decisions of the Supreme Court of the United States are absolutely binding upon the various state courts and must be followed. 15. *C. J.* 930. It follows from what has been said that the omission from the defendant's prayer of any reference to the evidence offered by the plaintiff to show that the carrier had waived the provisions of the bill of lading in regard to notice or that it was

estopped from asserting them was proper, and that there was no error in granting that prayer.

This brings us to a consideration of the plaintiffs' prayer which was refused. This prayer submits the proposition that the letter referred to in the evidence as a "tracer," sent by Leibowitz & Co. to the B. & O. Railroad Company, with the bill of lading and paid freight bill together, constituted a written claim for the loss, and as such complied with that provision of the bill of lading which required a written claim to be filed within a certain limited time. This proposition we are unable to approve, because the tracer possessed none of the characteristics of a claim, as that expression is ordinarily understood. The tracer was a mere request made by the shipper of the carrier to locate certain goods which had not been received. Whereas the "claim," which should have been filed in accordance with the terms of the bill of lading, could mean nothing less than a demand for the value of goods which had been lost. This distinction was very clearly pointed out by Joseph L. Bronstein, one of the appellants, in his testimony. He was asked to "explain what a claim tracer" was and he said, "a claim tracer means that the party wants to trace the bale of rags; he don't want the money * * *"; and he further testified in reference to the same matter: "Q. In other words you notified the railroad at first that you wanted the bale instead of the money? A. Yes. Q. You claimed the bale first? A. Yes. Q. And when the railroad could not find the bale you made claim for the monetary value? A. You could not make claim until you had the original papers." Of course the interpretation thus given by the witness to the word claim cannot be regarded as authoritative or conclusive, but it is consistent with common sense, and is supported by reason and authority. The section of the bill of lading under consideration provides that "as conditions precedent to recovery, claims must be made in writing * * * within six months * * * after a reasonable time for delivery has elapsed." And in construing a similar provision the court in *St. Louis, I. M. & S. R. Co.* v. *Star-*

*bird,* 243 U. S. 605, says: "Such notice puts in permanent
form the evidence of an intention to claim damages and will
serve to call the attention of the carrier to the condition of
the freight and enable it to make such investigation as the
facts of the case require while there is opportunity to do so."
And while the notice need not be in any particular form, it
must nevertheless possess the characteristics of a claim, that
is to say, it must amount to a demand for compensation, or
it must give notice of an intention to claim compensation for
loss suffered.   To ask whether goods have been lost or to
request that goods which have been mislaid be located, is not
the same thing as demanding compensation for goods which
have been lost or damaged.   The one is an inquiry for in-
formation, the other is a demand for compensation.   And
when, therefore, the appellants asked the appellee to "trace"
the goods, they did not thereby file a claim for compensation
for goods which they claimed had been lost, nor did they
indicate their intention of filing such a claim.   To hold that
such a notice amounted to a claim for damages would be to
disregard the plain words of the contract and to whittle away
by a strained construction their obvious meaning.   Nor would
the filing of such a claim satisfy the purposes for which the
words were inserted in the contract.   They were apparently
put there to protect the carrier, and to enable it to investigate
the circumstances connected with the loss, at a time when
information could ordinarily be more readily had in regard
to it.   Railroads are necessarily carried on by highly de-
veloped and extensive organizations, in which the work of
operation is apportioned and divided among many different
departments and branches, and a request to a department,
having in charge the actual transportation of goods, to locate
a missing article, would not likely in the ordinary course
come to the attention of a department handling claims for
compensation for loss occurring through some default on the
part of the carrier, and the officers responsible for the settle-
ment of claims would be without notice that any claim had
been filed, whereas a claim for monetary compensation for

loss or damage to goods would naturally be referred to the department having in charge the investigation of such claims. This view is consistent with that adopted in *Cudahy Packing Co.* v. *Bixby,* 199 Mo. App 589, 205 S. W. 865, and *St. Louis, I. M. & S. R. R. Co.* v. *Starbird, supra.* There are cases to which our attention has been called which are in apparent conflict with the view which we have expressed, but in regard to them it is sufficient to say that, as they are also in apparent conflict with the provisions of the statutes under consideration, the decisions of the Supreme Court construing them, and the terms of the contract made pursuant to the authority of those statutes, we cannot be influenced by them. For the reasons stated it follows that there was no error in refusing the plaintiffs' prayer. Having found no error in the rulings of the court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellee.*