## 11267

### ALLEN v. DAVIS, DIR. GEN'L.

(118 S. E. 614)

1. CARRIERS—TRIAL—INSTRUCTION THAT REASONABLE TIME FOR DELIVERY DOES NOT ELAPSE UNTIL AFTER CARRIER ABANDONED ATTEMPT TO TRACE FREIGHT HELD ERRONEOUS AND CHARGE ON FACTS.—An instruction that, under a provision of a bill of lading requiring claims for failure to deliver to be made in writing within six months after a reasonable time for delivery had elapsed, a reasonable time for delivery does not elapse until after carrier has abandoned a search for the undelivered freight, *held* erroneous as making reasonable time dependent on carrier's action and as being a charge on the facts.

2. CARRIERS—REASONABLE TIME FOR DELIVERY OF FREIGHT HELD QUESTION FOR JURY.—What is a reasonable time within which a carrier must transport and deliver freight, is an ultimate inference of fact to be drawn by the jury from all the relevant circumstances of the particular case, such as distance, route, mode of conveyance, character of freight, facilities available, usual time required, abnormal conditions of weather, and extraordinary conditions of any character affecting the movement of freights.

3. CARRIERS—LOSS BY TOTAL FAILURE TO DELIVER NOT "LOSS DUE TO DELAY OR DAMAGE" WITHIN PROVISION OF BILL OF LADING.—Where the loss claimed is absolute and arises from the total failure to deliver, the claim is not a loss or injury "due to delay or damage" within a provision of the bill of lading, providing that, except where the loss or injury complained of is due to delay or damage, claims must be made in writing within six months after a reasonable time for delivery has elapsed; hence such a claim must be filed within the period limited.

Before Rice, J. Spartanburg, April 1922.  Reversed and remanded.

Action by L. L. Allen against James C. Davis, Director General of Railroads. Judgment for plaintiff and defendant appeals.

*Messrs. DePass & Wrightson* for appellant cite: *Time within which claim must be filed:* 113 Atl., 648; 184 N. W.,

---

NOTE: On validity of stipulation in carrier's contract requiring notice of loss due to carrier's negligence see note in 17 L. R. A. (N. S.), 628.

35; 120 S. C., 199; 241 U. S., 190; 10 C. J., 340; 111 S. E., 710; 197 N. Y., 281; 188 N. W., 272.

*Messrs. Evans & Galbraith* for respondent cite: *Reply to new matter in discretion of Court:* 92 S. C., 188. *Liability of carrier for loss of goods:* 4 R. C. L. par., 373; 129 U. S., 128; 105 S. C., 406; 200 Fed., 203; 106 U. S., 599; 129 U. S., 442; 40 Fed., 733; 70 Fed., 767; 223 Fed., 560; 132 Ind., 134; 17 L. R. A., 342; 88 S. C., 366.

July 16, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action for recovery of damages on account of alleged failure to deliver two bales of cotton shipped from Macon, Ga., to Spartanburg, S. C., under the terms of a standard form railroad bill of lading, issued September 25, 1918. The plaintiff recovered, and from judgment on verdict the defendant, Agent of the United States Railroad Administration, appeals.

The defendant denied liability under the general issue, and introduced some evidence tending to establish that at least one of the bales of cotton had been delivered. But the main defense relied on was the alleged failure of the plaintiff to file a claim in compliance with the requirements of the following provision of the bill of lading:

"Except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded or damaged in transit by carelessness or negligence, as conditions precedent to the recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property (or in case of export traffic, within nine months after delivery at port of export), or, in case of failure to make delivery, then within six months (or within nine months in case of export traffic) after a reasonable time for delivery has elapsed."

The defendant adduced evidence tending to establish that no claim in writing had been presented at Macon, Ga., the point of origin of the shipment, or at Rutherfordton, N. C., the destination to which the shipment had been ordered diverted by the consignee, and that no claim had been filed at Spartanburg, the original point of delivery, until September 27, 1919, a little more than a year after the date of the bill of lading. The testimony most favorable to plaintiff's contention that the claim had been filed in due time was that of his witness Earle, who testified that he filed the claim at Spartanburg on behalf of Snowden, the original consignee, "before the six months was up after the cotton was shipped." but that he "couldn't remember the exact date," that "it was filed before Mr. Snowden left" on July 1, 1919, and that "it was after April 1, 1919, that he filed the claim." If the claim for Snowden was filed after April 1, 1919, it was not filed within six months from September 25, 1918, the date of shipment, as this witness had previously testified; and that it was filed at all between April 1 and July 1, 1919, was squarely controverted by the defendant's witness Hendley, who had been the Spartanburg agent since March 7, 1919. There is, therefore, adequate evidential basis for defendant's contentions (1) that no claim was filed until September 27, 1919, and (2) that the plaintiff's own testimony as to a filing between April 1 and July 1, 1919, is susceptible of the inference that the claim was not filed before May or June, 1919.

If so, from defendant's standpoint the vital question of mixed law and fact was whether the filing was "within six months after a reasonable time for delivery had elapsed." Upon the facts, defendant's contention, supported by the testimony of several witnesses, was that the usual length of time required for the transportation and delivery of a shipment of this character from Macon, Ga., to Spartanburg, S. C., and thence to Rutherfordton, N. C., under the war conditions prevailing at the time of shipment, was

from six to sixteen days; and, as a matter of law, he says that, under the facts of this case, this usual time was the "reasonable time for delivery" contemplated by the contractual limitations of the bill of lading, the lapse of which would start the running of the six months allowed for making claim in writing. In that view, if the claim was not filed until September 27, 1919, or even until May or June, 1919, as might be inferred from plaintiff's testimony, then it was clearly made and presented out of time.

Of the benefit of that legitimate inference of fact, the appellant says he was wholly deprived (exceptions 5 and 6) by the following erroneous charge of the trial Judge:

"If more than six months had elapsed and during that time of the six months they were negotiating with the agents of the railway company, if they had given them notice that the property had been lost, if they had made demand on them, and if the agents of the railway company were trying to trace the property during that time and while this was going on no formal claim in writing was filed, but later if the railway officials said they could not trace the cotton, if he later filed a claim, I think he would be in time, if it was within six months after negotiations broke off between them. * * *But if he gives them notice, whether it is in writing or not, and they get to work to trace the claim, in other words, if he gives them the information upon which they go to work and act to try to trace up the shipment, and during that time that they are trying to trace the shipment, the six months elapse, I do not think that under those conditions that this provision would apply, if he later within six months of the time after they broke off negotiations did file claim. In other words, when the railroad officials abandon the search and refuse to pay, if then within six months after that time if he filed his claim, I think it would be in time."

Since it was practically undisputed that the defendant had notice of the failure to deliver the cotton, that the railroad authorities were engaged for several months in an effort to trace and locate the shipment, that the negotiations with respect thereto continued until July, 1919, and that the claim was filed not later than September 27, 1919, there can be no doubt that the effect of this charge was clearly to direct a finding that the claim had been filed in due time within the legal meaning of the limitation contained in the bill of lading. If erroneous, it was therefore patently prejudicial.

Bearing in mind that the express provision of the contract is that "claims must be made in writing * * * within six months * * * after a reasonable time for delivery has elapsed," it is clear that the Circuit Judge's instructions were equivalent to adding thereto a proviso to the effect that a reasonable time for delivery shall not be held or considered to have elapsed until after the carrier has been unable to trace, or locate, or has abandoned a search for, the undelivered freight. The addition of such a provision not only made a new agreement for the parties, but incorporated therein an incongruous element. The very idea of a tracer carries the implication that a reasonable time for delivery, as usually understood, has already elapsed, since there should be no necessity for a search until after a reasonable time for delivery in due course. In thus making reasonable time for delivery equivalent to or wholly dependent upon such time as the carrier might see fit to consume in conducting a search for the lost or delayed freight, we think that Circuit Judge was clearly in error.

2. The reasonable time for delivery, contemplated by the contract here involved, is the reasonable time within which a carrier in the discharge of its common-law duty is bound to transport and deliver freight. In the absence of an arbitrary standard prescribed by statute, the law does not attempt to fix by rule what is such reasonable

time.. 10 C. J. 286, § 407. What is a reasonable time is an ultimate inference of fact to be drawn by the jury from all the relevant circumstances of the particular case. Distance, route, mode of conveyance, character of the freight, facilities available, usual time required, abnormal conditions of weather, and extraordinary conditions of any character affecting the movement of freights may be, and usually are, pertinent to this inquiry, which is to be resolved by the triers of fact in the light of the only rule the law, in the nature of case, can apply—that a common carrier is bound to transport and deliver freight in a reasonable time; that is, such time, and no more than such time, as may be required for that purpose .in the exercise of due care and diligence under the circumstances of the particular case.. 10 C. J., 286, 287, § 407. In that view, therefore, the question involves merely a phase of the law of negligence.. In instructing that certain facts as to tracer and search, if proved, would authorize a conclusion of law that the claim had been filed in time, the judge plainly passed beyond the boundary line which separates the province of the Judge from that of the jury, and expressed his opinion upon the controlling question of fact in the case, viz: as to when a reasonable time for delivery had elapsed. *Bridger v. Railroad,* 25 S. C., 30, 31. *China v. Sumter,* 51 S. C., 460; 29 S. E., 206. *Jones v. Railway Co.,* 61 S. C., 563; 39 S. E., 758.

If the charge be construed as merely tantamount to an instruction that certain facts, if proved, would establish a waiver or estoppel against the carrier, precluding it from' claiming that time taken for conducting a search should not be included in the reasonable time for delivery contemplated by the contract, the instruction would still be subject to the same criticism. It could not, we think, be held that the facts were susceptible of only one inference, and whether the carrier had waived the benefit of the limitation of the bill of lading or was estopped to assert that a reasonable time for delivery had not elapsed by reason of the cir-

cumstances to which the Court referred, was a question for the jury under appropriate instructions.

In this connection, however, we are not to be understood as holding that the plea of waiver or estoppel was available to the plaintiff in the case at bar. This being an interstate shipment, the provisions of the bill of lading must be construed in the light of Federal Statutes applicable and of the controlling decisions of the Federal Supreme Court. While we have been cited to no decision upon the precise point here involved, the Supreme Court of the United States would seem to be clearly committed to the doctrine that the prohibitions of the Federal law "against unjust discriminations relate not only to inequality of charges and inequality of facilities, but also to the giving of preference by means of consent judgments or the waiver of defenses open to the carrier." See C. J., 340; *Phillips v. Grand Trunk W. R. Co.,* 236 U. S., 662, 667; 35 Sup. Ct., 444 59 L. Ed., 774. *Georgia, etc., Ry. v. Blish Milling Co.,* 241 U. S., 190; 36 Sup. Ct., 541; 60 L. Ed., 948. *Texas & Pacific Ry. Co. v. Leatherwood,* 250 U. S., 478; 39 Sup. Ct., 517; 63 L. Ed., 1096. *Ellis v. Davis,* 43 Sup. Ct., 243; 67 L. Ed., 8; U. S. Comp. Stat., 1916, § 8604. *St. Sing et al. v. Am. Ry. Express Co.,* 183 N. C., 405; 111 S. E., 710. If the carrier may by agreement or by conduct fix what is a "reasonable time for delivery" in any case, it would seem that it might or might not invoke the defense of this contractual limitation at its option and could in that particular practice at pleasure discrimination in the payment of contest of claims. See 10 C. J., 340 § 495. *Bronstein v Payne, Director General,* 138 Md., 116; 113 Atl., 648. *Carbic Mfg. Co. v. Western Express Co.,* 149 Minn., 467; 184 N. W., 35. *McFall v. St. Louis, etc., Co.,* (Mo. App.), 185 S. W. 1157. *Olivit v. Penn. R. Co.,* 88 N. J. Law, 241; 96 Atl., 582. But we do not regard an adjudication upon the point indicated as essential to this decision. The instructions complained of were erroneous as a charge on the

facts, and the appellant's fifth and sixth exceptions must be sustained upon that ground.

The trial Court further charged the jury (exception 7) as follows:

"If this cotton was lost while being loaded or unloaded, then this provision filing the claim within six months does not apply."

That instruction was based upon the following language of the bill of lading:

"Except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded or damaged in transit by carelessness or negligence * * * claims must be made in writing," etc.

The claim here sued on is for an absolute loss of goods in breach of the contract of carriage; it is not for loss, damage, or injury "due to delay or damage." There being no allegation or suggestion that the injury complained of was due to delay of or damage to the goods, respondent's contention that it was incumbent on the carrier to establish that the loss did not occur in loading or unloading or was not "damaged in transit by carelessness or negligence," is untenable. Where the loss claimed is absolute and arises from a total failure to deliver, the nature of the claim fairly excludes losses or injuries "due to delay or damage." Hence, as we think, the case is clearly not within the meaning or purport of the proviso here invoked by the plaintiff, but presents a typical case for the application of the contractual stipulation requiring the filing of claim within the period limited. *St. Sing et al. v. Am. Ry. Express Co.,* 183 N. C., 405; 111 S. E., 710, 711; and see *Lissberger v. Bush Terminal Co.,* 119 Misc. Rep., 691; 197 N. Y. Supp., 281. *Henningsen Produce Co., v. Am. Ry. Express Co.* (Minn.), 188 N. W., 272. The seventh exception is sustained.

The validity of the stipulation requiring that claims in writing be made within the six months limited has not been attacked upon the ground of unreasonableness. Its validity

18—S. C.—125.

was recognized and upheld generally by this Court in *Freeman v. A. C. L. R. Co.*, 120 S. C., 199; 113 S. E., 69; and see *Manning Oil Mills v. N. W. R. R. Co.*, 115 S. C.,224; 105 S. E., 343. A portion of respondent's printed argument, however, would seem to warrant the further observation in this connection that the stipulation may not be held void and inoperative as an attempt on the part of the carrier to contract against liability for negligence. *Broom v. W. U. Tel. Co.*, 71 S. C., 511; 51 S. E., 260; 4 Ann. Cas., 611. *Freeman v. A. C. L. R. Co., supra. Southern Evpress Co. v. Caldwell*, 21 Wall., 264; 22 L. Ed., 556; *Queen of the Pacific*, 180 U. S., 54; 21 Sup. Ct., 278; 45 L. Ed., 421. *Missouri, etc., Ry. Co. v Harriman Bros.*, 227 U. S., 672; 33 Sup. Ct., 397; 57 L. Ed., 690. *Texas & Pacific Ry. Co. v. Leatherwood, supra;* notes 17 L. R. A. (N. S.), 628; 9 Ann. Cas., 17.

The remaining exceptions (1, 2, 3, and 4) present no reversible error and are overruled.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

Reversed.