12523

BOWERS v. CAROLINA PUBLIC SERVICE CORP., *ET AL.*

(145 S. E., 790)

*Messrs. Douglas McKay,* and *Herbert & Dial,* for appel-
'lantt,

*Messrs. A. F. Spigner,* and *Mendel L. Smith,* for· re-
spondent,

November 15, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On the morning of September 11, 1926, one Thomas Bowers, while riding in a wagon drawn by a mule along one of the streets of the city of Columbia, this street being

also a public highway of the state, was run into and killed by a motor truck, the property of the defendant motor company, driven by one of its employees, the defendant, Wyatt Beachum. This suit was brought by the administratrix of the estate of Bowers for damages on account of his death, for the benefit of his widow and children. The following specifications of negligence and willfulness are alleged in the complaint: "That the death of the said Thomas H. Bowers was due to and caused by the joint and concurrent negligence, willfulness, and wantonness of the defendants in running its said automobile truck, which was then heavily loaded with ice, at a high and dangerous rate of speed, which speed was in excess of that allowed by the laws of the State of South Carolina, and by the ordinance of the City of Columbia, and by driving said truck in violation of the city ordinances of the City of Columbia and the laws of the State of South Carolina on the left hand side of the street, and highway, while said motor truck was proceeding in an easterly direction without the said Wyatt Beachum, alias W. Beachum, keeping a proper watch or observation upon said highway and street, and without looking where he was going, and without said Wyatt Beachum having and keeping the truck under such control as would enable him to stop the same in time to avoid running into and killing said Thomas H. Bowers after he had seen him traveling in the street."

The defendant company denied that it was negligent or willful in any respect, and alleged that decedent's own negligence or willfulness in driving the wagon at nighttime upon the streets of the city of Columbia, without showing a light or lights as required by the city ordinance, contributed to his death as a proximate cause thereof.

The case was tried in the Court of common pleas for Richland County by Judge Townsend and a jury May 26, 1927. At the close of the testimony, the defendant company moved for a directed verdict both as to actual and punitive

damages. The Court overruled the motion, and the jury found for the plaintiff in the sum of $15,000. The defendants now appeal to this Court by five exceptions, which will be considered in order.

First, there is no merit in the contention that the trial judge committed error in the admission of testimony as to the corporate wealth of the defendant company, when the same was not alleged. The plaintiff pleaded acts of joint and concurrent negligence, willfulness and wantonness on the part of the defendants, and such allegations support a cause of action for punitive as well as for actual damages. *Baldwin v. Cable Co.*, 78 S. C., 419, 59 S. E., 67. The award of punitive damages is for the purpose of vindicating a private right which has been willfully invaded, and is intended in a measure as a punishment for the willfulness with which the right was violated. *Hall v. Railroad Co.*, 28 S. C., 261; 5 S. E., 623. In order that the punishment might not be excessive on the one hand, or inadequate on the other, evidentiary knowledge of the financial ability of the wrongdoer to pay is essential. *Calder v. Railway Co.*, 89 S. C., 287; 71 S. E., 841; Ann. Cas. 1913A, 894. An allegation by plaintiff of the defendant's financial condition is not a prerequisite to the admission of such evidence.

Consideration of the second and third exceptions requires some reference to the testimony. These exceptions impute error to the trial judge in refusing defendants' motion for a directed verdict, on the grounds (exception 2) that there was no evidence of negligence on the part of the defendants which was shown to be a proximate cause of the accident, and (exception 3) that, as a matter of law, plaintiff's intestate was guilty of such contributory negligence, in traveling without a light in violation of the city ordinance, as would defeat recovery.

With respect to the second exception, there was testimony tending to show that, at the time Bowers was killed, he was traveling in a wagon along one of the streets of the city of

Columbia on the right-hand side of the street; that the defendant's truck was being driven in the opposite direction, going toward Eastover, on the left-hand side of the street, in the direction in which it was going; that, when it struck the wagon, Bowers was thrown to the pavement, and, although the defendants claimed to be going not more than 15 miles per hour, was dragged a distance of from 48 to 57 feet before the truck was stopped; that the lights on the truck were not strong, casting a light in front of it for a distance of about 30 feet; and that the driver was not keeping a proper lookout, as he was upon the wagon before he saw it. There was ample testimony to go to the jury on the question of the negligence and willfulness of the defendants in the operation of the truck in one or more of the particulars alleged in the complaint.

The third exception must also be overruled.

The ordinance in question is as follows: "Each and every vehicle using the public streets or highways of the city shall show at night a light, or lights, so placed as to be seen from front, rear and side. Such light or lights to be of sufficient illumination power to be visible at a distance of 200 feet, said light or lights shall show white in front, but may be colored on the side or rear. 'At night' shall mean the time during which the arc lights of the city are, or should be, lighted."

It is clear that the ordinance was intended to impose a requirement made necessary, by reason of the darkness, for the safety of both vehicles. We do not think it was intended to mean that vehicles using the public streets or highways of the city should show a light, or lights, as long as the arc lights were operating, regardless of the state of daylight or darkness.

While it was admitted that, at the time of the accident, the arc lights had not been turned off, there was testimony tending to show that it was then daylight; that it was about 5:25 or 5:30 in the morning, and that the sun rose at 6:05;

that at the time the collision occurred a person could read an ordinary newspaper without artificial light. On the other hand, there was evidence tending to show that it was dark, that the morning was cloudy, and that, in order to see distinctly and clearly, artificial light was necessary. Under the conflicting testimony on this point, the questions of contributory negligence and of proximate cause were matters entirely for the jury.

The following charge of the Court is made the basis of the fourth exception: "Where a collision occurs between the vehicle of a person on the wrong side of a road or highway and that of a person coming in the opposite direction towards him, a presumption would arise that being on the wrong side was negligent, but his presence on that side may be explained or justified by evidence so as to rebut any presumption of negligence. and where there is any testimony or evidence bearing on the matter, it should be decided in accordance with the greater weight of the evidence. Whether or not the person on the wrong side of the road was or was not negligent, depends upon all the facts and circumstances of the situation at that particular time, and the reason he may have had for being there. Being on the right side of the road does not exempt a person from the obligation to use ordinary care for his own protection while driving there."

It is contended that "His Honor was in error in charging that any presumption arises in such case." This contention is without merit. The charge as a whole was substantially in accord with the principles laid down in *Simms v. Eleazer*, 116, S. C., 41, 106, S. E., 854, 24, A. L. R., 1293.

When the Court had about concluded his charge to the jury, the following took place:

"Mr. Herbert: If your Honor please, I would like to have your Honor to construe that part of the ordinance which says what is 'at night'—which construes nighttime. In other words, the ordinance does not leave it to the discre-

tion of the jury as to when it is nighttime and when it isn't. It says, 'those lights shall be burning during the time the arc lights of the city are burning.' "

"The Court: The ordinance requires the lights to be on the wagon at the same time the arc lights of the city are on and a failure to have the light on the wagon during such period would be negligence but it would be for the jury to say whether such negligence contributed to the collision, depending on how much daylight then existed; and that should depend upon the stage or state of the daylight. It would be for the jury to determine from the evidence if the lights of the city were on—the arc lights. If there were no lights on the wagon when the arc lights of the city were on that would be negligence under the ordinance, but whether the absence of the lights on the wagon was the proximate cause of the collision would depend upon whether there was enough daylight there to enable the driver of the motor truck to clearly and distinctly see the wagon, notwithstanding the fact that it had no artificial light upon it."

This charge is made the basis of the fifth exception, the contention being "that * * * his Honor told the jury what facts and circumstances they were to take into consideration and in effect instructed them as to the weight, force and effect of the testimony, and was therefore a charge on the facts and therefore erroneous."

It is suggested that this instruction, in effect, completely eliminated the defense of contributory negligence. We think however, when the Court's charge is considered as a whole, in the light of the issues involved in the case and of the facts disclosed by the testimony, the objection is seen to be without merit. The appellants pleaded, and attempted to show by testimony, that the failure of Bowers to have a light on his wagon at the time of the accident, in violation of the city ordinance requiring lights to be placed upon vehicles traveling upon its streets at night, was the proximate cause of his death. The respondent, while admitting that Bowers had no

light on his wagon, offered testimony tending to show that, at the time the accident occurred it was daylight, and that the wagon and mule could have been as easily seen by the driver of the truck, if he had looked, as if the artificial light had been on the wagon, and that therefore there was no necessity for such light. An issue of fact was thus squarely presented to the jury.

In his charge, the Court read to the jury the ordinance requiring lights to be placed on vehicles using the streets of the city at night telling them that a violation of the ordinance was negligence *per se*. In addition, he charged the following requests of the appellants, which, in effect, emphasized the law as already charged:

"I charge you that the violation of a city ordinance is negligence *per se*, that as a matter of law, and if you find that the plaintiff's intestate, that is, Mr. Bowers, was guilty of violating a city ordinance and you find that such violation was a proximate cause of the accident, then even if the defendants were guilty of negligence the plaintiff could not recover unless you should find that the defendants were guilty of some willfulness or wantonness alleged in the complaint."

"Even if you should find that the defendants were negligent, if you should also find that the plaintiff's intestate, that is, Mr. Bowers, was also guilty of negligence in driving without a light and that such negligence was a proximate cause of the accident or collision, then, unless you should find that the defendant was guilty of some willfulness or wantonness which contributed as a proximate cause to his death your verdict should be for the defendants."

When requested, as stated, to construe the ordinance, as to what was meant by "nighttime," the Court did so without unnecessarily restating the principles of law given in his general charge. However, he again directed the minds of the jury to the legal consequence of the violation of the ordinance; that is, that failure to have a light on the wagon

at the time required by the ordinance constituted negligence. But he also, under the issues made by the pleadings and the evidence, properly called their attention to the fact, that, if they found there was daylight for the driver to see the wagon *clearly* and *distinctly,* the absence of the artificial light would be without legal significance.

While the court did not intimate any opinion as to the facts of the case, he doubtless might have chosen language more apt in expressing the idea he intended to convey to the jury—words that would have better expressed his meaning. However, what he said, in effect, was that, if the daylight served the same purpose intended by the ordinance to be served by the artificial light, then the absence of the artificial light would not be regarded as a proximate cause of the injury. The principle is analogous to the rule announced by this Court with respect to the railroad crossing statute, that, if a person, with actual knowledge of the approach of a train, goes upon the crossing and is injured, the failure to give the statutory signals would in no way contribute to the accident. *Barber v. Railroad Co.,* 34 S. Ct. 450, 13 S. E., 630; *Drawdy v. Railway Co.,* 78 S. C., 374, 58 S. E., 980.

Keeping in mind, therefore, that the Court in his charge had already stated clearly and comprehensively the principles of law responsive to the issues in the case, that he had read the ordinance to the jury, making clear to them its requirements and the legal consequences of its violation, that the question whether the daylight at the time of the accident made an artificial light on the wagon unnecessary was kept before their minds during the entire trial, and that the Court was addressing his remarks to practical minded men, we are satisfied that the jury were not misled in any way by the language complained of. Even if there was error, in the light of the facts disclosed by the record, it was harmless.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): I concur with MR. JUSTICE STABLER *in the result* of his disposition of the first four exceptions, and will express my conclusions in reference to them in my own way. I dissent from his disposition of the fifth exception, and will discuss it later.

This is an action for damages, resulting from the wrongful death of the intestate, Thomas H. Bowers, due, as alleged, to the willful and negligent act of the defendant company's agent and servant, in causing a collision between the intestate's wagon and a truck driven by said agent.

The facts appear to be as follows: The deceased, Bowers, was a farmer living about 2 miles from the city of Columbia, to the east of the city; on September 11, 1926, he started from his home with a load of vegetables, in a wagon drawn by a mule; at about 5:30 in the morning he entered the corporate limits of the city, and had proceeded a short distance toward the center of the city, traveling in a west direction, upon the hard-surfaced street, and on the proper side of the street. It was early in the morning, and the arc lights of the city had not been turned off. He had no light attached either to the front or rear of his wagon as required at night by ordinance.

A short time before 5:30 a. m., the defendant company had sent out a motor truck loaded with ice, drawing behind it a trailer similarly loaded, bound for Eastover, a point reached by the same road that was being used by the deceased, Bowers. The truck was being driven by an employee of the company, the defendant Beachum, and another employee was sitting by him. They were traveling upon their proper side of the hard-surfaced street, and at a moderate rate of speed. A collision occurred between the wagon and the truck which resulted in the death of Bowers. A short distance from the point at which the vehicles came together, the trailer attached to the motor truck ran off the paved street, the front and rear wheels, on the right side, plowing into the soft dirt at the edge of the hard-surfacing,

the other wheels remaining on the pavement. In order to get the wheels of the trailer back on the pavement, the driver cut the truck to the left, practically crossing the street, from the proper side to the wrong side, and collided with the wagon, with the result above stated.

The specifications of negligence in the complaint were in running the truck at a high and dangerous rate of speed, in excess of the statute law and the city ordinances; in operating the truck on the wrong side of the street; in not keeping a proper lookout; and in not keeping the truck under proper control.

The answers of the defendants contained a denial of the material allegations of the complaint and set up as a defense the contributory negligence of the deceased in driving his wagon in the darkness without the lights required by the ordinance of the City of Columbia.

The applicable section of the Criminal Code is as follows: "Sec. 579. Every person * * * traveling or passing over, any * * * public highway, * * * shall keep entirely on the right of the center of the said * * * public highway, * * * so as not to obstruct the passage of any other person, * * * on the other side of the center thereof. * * * "

The ordinance of the City of Columbia is as follows: "Each and every vehicle using the public streets or highways of this city shall show at night a light, or lights, so placed as to be seen from front, rear and side. Such light or lights to be of sufficient illumination power to be visible at a distance of 200 feet, said light or lights shall show white in front, but may be colored on the side or rear. 'At night' shall mean the time during which the arc lights of the city are, or should be, lighted."

The case was tried before his Honor, Judge Townsend and a jury, at May term, 1927. At the close of the testimony, the defendants have appealed upon exceptions which present favor, upon the following grounds:

"We would like to move for a direction of verdict for the defendant, first, on the ground that there is no evidence of negligence on the part of the defendant, which is shown to be a proximate cause of the accident.

"Second: On the ground that the undisputed evidence shows that the plaintiff's intestate, Mr. Bowers, was driving within the city limits without a light, as required by the city ordinance, during the time when the light was required, and that inasmuch as the collision occurred, it must be—it is evident that that was the proximate cause of the accident and, therefore, the Court should say, as a matter of law, that the plaintiff's intestate was guilty of such contributory negligence as would prevent a recovery.

"Third: As to punitive damages, we move for a directed verdict on the ground that there is no evidence of willfulness, which would justify any verdict for punitive damages."

The motion was refused, and, upon submission of the issues to the jury, a verdict was returned in favor of the plaintiff for $15,000. From the judgment entered thereon, the defendants have appealed upon exceptions which present the questions set forth in the several subdivisions hereof."

I. *Was there error in admitting evidence as to corporate wealth of the defendant Carolina Public Service Company, when same was not alleged?*

It is generally held in this state that, in an action based upon an alleged willful, wanton or malicious act, in which punitive damages are claimed, evidence of the financial condition of the defendant is admissible in order that the jury may properly inflict such pecuniary punishment as they may think proper. We know of no case, and none has been cited, which requires the plaintiff to make allegation of such fact as a condition of the admission of evidence. *Elms v. Southern Power Co.,* 79 S. C., 502, 60 S. E., 1110; *Calder v. Southern R. Co.,* 89 S. C., 287, 71 S. E., 841, Ann. Cas. 1913A, 894.

II. *Was there error in refusing defendants' motion for directed verdict on the ground that there was no evidence that the defendants were guilty of negligence under the circumstances, in pulling to the left-hand side of the road, when there was no light on the wagon of plaintiff's intestate to indicate that damage would result?*

I think that there can be no doubt of the correctness of the proposition that where the defendant is shown to have violated a specific *rule of care* prescribed by statute, it will be held, as a matter of law, that he has been guilty of negligence. In other words, the statute has withdrawn from the jury the issue of negligence as a fact, and, as the common expression is, declares the act of negligence *per se.*

It is conceded that the defendant's agent veered the truck from the right-hand side of the highway, which was the proper side for his truck, to the left-hand side, which was the wrong side; that he thus violated section 579 of the Criminal Code; and, under numerous cases decided by this Court, such violation of the statute was negligence *per se,* certainly enough to carry the case to the jury upon this aspect.

Under the decisions of this Court, construing Section 579 of the Criminal Code, requiring the traveler to keep on the right of the center of the road, there are many circumstances which may not only justify, but require, the traveler to depart from the strict terms of the statute. *Smoak v. Martin,* 108 S. C., 472, 94 S. E., 869; *Walker v. Lee,* 115 S. C., 497, 106 S. E., 682; *Sims v. Eleazer,* 116 S. C., 44, 106 S. E., 854, 24 A. L. R., 1293; *Ogelsby v. Rhea,* 124 S. C., 57, 117 S. E., 303.

Should a serious obstacle be presented to the traveler upon his proper side of the road, he has the right to avoid if necessary by changing to the other side; if it be necessary in order to protect his life or his property, he has that right; if he should be opposed by the reckless conduct of an approaching car on its improper side of the road, he has that right.

These, however, are matters of justification or excuse; matters of fact, the burden of establishing which is upon the defendant, and which the presiding Judge properly left to the decision of the jury. The motion for a directed verdict upon the ground that there was no evidence tending to show negligence in the operation of the truck was, therefore, properly refused.

In addition to this, upon a similar matter, the violation of the statutory duty to give signals on approaching a railroad crossing, this Court, in the case of *McBride v. R. Co.,* 140 S. C., 260, 138 S. E., 803, declared: "* * * When a person is injured by a collision with the engines or any car or cars of a railroad corporation at a crossing, and the railroad failed to give the statutory signals at such time and place, the presumption arises that the failure to give the signals is the proximate cause of the injury, since such injury is the natural and probable consequence of the failure to give the signals and is the very injury intended to be prevented by the statute. It must be borne in mind that this presumption does not mean that the causal relationship between the failure to give the signals and the injury is shown conclusively. The presumption merely establishes a *prima facie* case, which may be overcome by testimony, whether given for the plaintiff or for the defendant."

So that, under the decisions holding that the violation of a statute, intended for the safety of those concerned, is negligence *per se,* and under the decision in the *McBride case,* that it is not only negligence *per se,* but raises a presumption that such violation was the proximate cause of the injury (a decision with which I did not agree, but now feel bound by as long as it stands), there can be no doubt of the correctness of the Judge's ruling.

III. *Was there error on the part of his Honor in refusing to direct a verdict for defendants on the ground that the contributory negligence on the part of plaintiff's intestate in driving without a light, in violation of city ordinance, was,*

*as a matter of law, the proximate cause of the accident, and that this appeared as the only reasonable inference from the testimony?*

It is conceded that the deceased was driving his wagon without lights. Whether that constituted negligence depends upon the further question whether the conditions referred to in the ordinance existed which made that requirement effective.

The ordinance requires the lights to be displayed "at night," and defines that time to be "the time during which the arc lights of the city are or should be lighted."

The trial Judge construed this ordinance to mean that it was the duty of the traveler to be guided by the criterion fixed in the ordinance, and, regardless of the actual conditions existing, to keep his light burning as long as the arc lights were burning. *This is the law of this case,* as there has been no exception to the charge upon this ground, and could not have been by the plaintiff. (Parenthetically, I may say that, as an open question, I would not so construe the ordinance. It was intended to prescribe a condition in which, by reason of the darkness, the precaution would be necessary for the protection of both vehicles. I do not think it was intended to mean that the mere fact that the arc lights were operating, regardless of the condition of daylight or darkness, made the duty imperative.)

Accepting then, as we must do, the construction placed upon the ordinance by the trial Judge, as it is conceded that the traveler did not have a light upon his wagon, and that the arc lights of the city were burning, it follows, under the decision in the *McBride case,* that the traveler was not only guilty of negligence *per se* in the violation of the ordinance, but that such negligence was, at least, a proximate couse of the collision.

It is decided in the *McBride case* that the failure of a railroad company to sound the statutory signals for a crossing at which a collision occurred is not only negligence *per se,*

but raises a presumption that the neglect to give the signals was the proximate cause of the collision; that this presumption, however, is only a presumption that it "merely establishes a *prima facie* case which may be overcome by testimony, whether given for the plaintiff or for the defendant." There can be no difference between the neglect to conform to a statutory requirement and a neglect to conform to the requirement of a *municipal ordinance;* one is as much a *legal* requirement as the other. There can similarly be no difference between a duty imposed upon a *plaintiff* and one imposed upon a *defendant;* the law is no respector of persons.

It cannot be logically held in the case at bar that the act of the defendants in operating a truck on the wrong side of the street, in violation of the statute, was negligence *per se* and presumptively a proximate cause of the collision, without applying the same rule to the failure of the deceased to comply with the requirement of the ordinance that his vehicle be equipped with lights.

As this presumption may have been overcome by testimony, for instance that the truck driver saw the wagon in time to have avoided the collision, or other evidence showing that the absence of a light was not *the* or *a* proximate cause, the nonsuit was properly refused upon the ground stated.

IV. *Did his Honor err in charging the jury that, where a person is driving on the wrong side of the road and an accident occurs while he is in that position, a presumption of negligence arises?*

There would be some force in the objection here raised, if the Circuit Judge had charged in the language of the question. As will be seen by a reproduction of the charge, his Honor *stated a hypothetical instance of a clear violation of the statute,* from which there can be no·doubt that the presumption would arise: "Where a collision occurs between the vehicle of a person on the wrong side of a road or high-

way and that of a person coming in the opposite direction towards him, a presumption would arise that being on the wrong side was negligent, but his presence on that side may be explained or justified by evidence so as to rebut any presumption of negligence, and where there is any testimony or evidence bearing on the matter, it should be decided in accordance with the greater weight of the evidence. Whether or not the person on the wrong side of the road was or was not negligent, depends upon all the facts and circumstances of the situation at that particular time, and the reason he may have had for being there."

V. *Did his Honor err in charging the jury that the question, whether or not the absence of the light on the wagon driven by plaintiff's intestate was a proximate cause of the accident, would depend upon whether the defendant's driver could clearly and distinctly see the wagon, notwithstanding the fact that it had no artificial light upon it, the appellant contending that he thereby charged on the facts and misled the jury?*

The charge complained of was this: "Whether the absence of the lights on the wagon was the proximate cause of the collision would depend upon whether there was enough daylight there to enable the driver of the motor truck to clearly and distinctly see the wagon, notwithstanding the fact that it had no artificial light upon it."

The issue whether or not the alleged negligence of the driver, in not having a light upon his wagon, in violation of the ordinance, was a proximate cause of the collision, bore directly upon the major issue whether or not he was guilty of contributory negligence; for the contributory negligence of the driver of the wagon would not avail the defendant, unless it be shown to have been a proximate cause of the disaster.

If, as a matter of fact, there had been enough daylight there to enable the driver of the truck to see the driver of the wagon in time to have avoided the collision, and he

failed to use due care in observing the approach of the wagon, he would have been guilty of negligence; but his negligence would not prevent the negligence of the driver of the wagon from being at least *a* proximate cause of the collision; the contributory negligence of the injured party can never arise except under circumstances of negligence on the part of the one causing the injury.

Accepting the construction placed upon the ordinance by the trial Judge, there can be no doubt that the traveler violated the ordinance, and under the *McBride case* that the violation was presumptively a proximate cause of the collision.

Accepting my suggested construction, the issue would arise whether the deceased had committed a breach of the ordinance; there was evidence tending to show that he had, from which the jury might have so found. Notwithstanding their possible conclusion to this effect, and plainly for the purpose of counteracting it, they were charged that, *although the deceased may have been guilty of negligence in this respect, the plaintiff was entitled to recover if the defendants could reasonably have avoided the collision.* In other words, the plaintiff was entitled to recover notwithstanding the negligence of the deceased, if the defendants were guilty of negligence; which, as shown by the cases on *Cooper v. R. Co.,* 56 S. C., 91, 34 S. E., 16, and *Jones v. R. Co.,* 61 S. C., 556, 39 S. E, 758, was a complete elimination of the defense of contributory negligence

In the case of *Cooper v. R. Co.,* 56 S. C., 91, 34 S. E., 16, the Circuit Judge charged the jury: " * * * Although the plaintiff may be negligent to some extent, yet if the injury complained of could have been avoided by ordinary care of the defendant, then defendant is responsible;" and " * * * although his [plaintiff's] act caused it, if it could have been prevented by the ordinary care of the defendant, and the defendant did not observe that care, it is liable."

The judgment was reversed for error in this charge, the Court saying: "It is thus seen that contributory negligence by a plaintiff can never exist except when the injury has resulted from the negligence of defendant as a concurring proximate cause. In view of this and and of the well-established rule that contributory negligence to any extent will always defeat a recovery, it was error to instruct the jury as above. *The effect of the instruction was to eliminate contributory negligence as a defense.*"

The same error caused a reversal in the case of *Jones v. R. Co.,* 61 S. C., 556, 39 S. E., 758, where the Court said: "The law in this State is settled that contributory negligence as defined in *Cooper's case, supra,* to any extent will always defeat plaintiff's recovery, unless the injury is wantonly or willfully inflicted. * * * [As a matter of course, the quality of proximate cause must exist.] The jury ought to have been instructed without qualification, that if plaintiff was negligent and that negligence contributed as a proximate cause to her injury, she could not recover unless the injury was wantonly or willfully inflicted."

If the charge had been that if the driver of the truck *had actually seen* the approaching wagon, without a light, in time to have avoided the collision, the absence of the light could not have been a proximate cause, the charge would have been unobjectionable, for the reason that the office designed for the light on the wagon, notice of its approach, would have been discharged, notwithstanding absence of the light.

The case of *Barber v. R. Co.,* 34 S. C., 444, 13 S. E., 630, cited by Mr. Justice Stabler, is a perfect illustration of this principle, and I respectfully submit, is not at all applicable to the case at bar. In that case the injured party had *actual notice* of the approach of the train which had given no signals. The Court said: "The manifest object of requiring the signals is to give notice to persons crossing or wishing to cross a railroad track, in order that they may keep out of the way of an approaching train; but if they know of the

approach of the train without any signal being given, where is the necessity for such signals, and how could it be said with any propriety that the failure to give them contributed in any way to the disaster?"

The case of *Drawdy v. R. Co.*, 78 S. C., 374, 58 S. E., 980, also cited by Mr. Justice Stabler, is of exactly the same character; it cites the *Barber case*.

In *Griskell v. R. Co.*, 81 S. C., 193, 62 S. E., 205, the Court said: "Conceding that defendant was negligent in not giving the statutory signals, this could not have been a proximate cause of the injury, since intestate heard the station blow, saw the headlight, and was racing to beat the train to the depot."

If the plaintiff had not seen the approaching train, but by the exercise of due care should have seen it, would the trial Judge have been justified in charging that this negligence insulated the negligence of the railroad company, as a matter of law, from being at least *a* proximate cause of the injury? I think that thereby an issue of fact would be raised whether the plaintiff had been guilty of contributory negligence, which necessarily assumed the continued negligence of the railroad company.

In each one of these cases, *Barber, Drawdy,* and *Griskell,* the party injured *knew* that the train was approaching, and the Court held that the negligence *per se* of the railroad company could not have been the proximate cause of the collision, for the reason that the signals were required for the purpose of giving notice of the approach of the train which the party injured already had. If it had appeared that the party injured did not know of the approach of the train, but that by the exercise of due care he should have seen it, then, unless no other reasonable inference could be drawn than that the negligence of the party injured contributed as a proximate cause to the collision, the matter of his contributory negligence, concurrent with the fixed negligence of the railroad company, presented an issue for the jury. The

trial Judge, under these circumstances, ordinarily would not be justified in charging that the negligence of the party injured necessarily relieved the railroad company from the charge of negligence *per se.*

In the case of *Easler v. R. Co.,* 59 S. C., 311, 37 S. E., 938, Chief Justice McIver, in an opinion concurred in by Justice Pope (the case was decided by a divided Court, Justices Gary and Jones taking a contrary view), referring to the charge, "It is not sufficient for the defendant to show that the plaintiff may, to some extent, have been careless or negligent; the jury must be satisfied, before they can find for the defendant on such plea as that, that the plaintiff's negligence was the direct and proximate cause of the injury," said: "He completely ignored and eliminated the word 'contributory,' and practically presented the issue to the jury as if the sole question was whether the injury was caused by the plaintiff's own negligence or that of the defendant; whereas, the issue presented by a plea of contributory negligence is whether both parties were negligent, and whether the negligence of each contributed as a proximate cause to the injury complained of."

In *Coleman v. Levkoff,* 128 S. C., 487, 122 S. E., 875, the alleged contributory negligence of the plaintiff was in driving his own automobile at a rate of speed in violation of a city ordinance. The Court said: "But whether the negligence of the plaintiff in driving at a speed in excess of the prescribed limit, or his negligence in any other particular, was the sole proximate cause of the collision, or contributed thereto as a proximate cause, was, under the facts in this case a question for the jury."

It would clearly have been invading the province of the jury to have charged that, if the injuring party should have seen that the plaintiff was exceeding the speed limit, the plaintiff's negligence *per se* could not have been the proximate cause of the collision.

The learned Justice, I respectfully submit, has confused two principles applicable to the case: The principle that the failure to obey a statutory regulation is negligence *per se,* and the presumption *(McBride case)* that the failure was the proximate cause of the disaster. The law attaches no presumption to the breach of a statutory duty; it is declared to be negligence *per se;* there is no possibility of avoiding that conclusion by any kind of evidence; it is a legal principle that continues through the entire case, unaffected by any evidence that might be produced. The question of its having been the proximate cause of the disaster is quite another thing. The very discussion of this question presupposes the continuance of the principle of negligence *per se.* The conclusion that it was not the proximate cause (resolved either by Judge or jury) does not overthrow the principle that the act was negligence *per se;* it simply assigns the act to the category of innocuous instances of negligence. In the case of *Glenn v. R. Co.,* 21 S. C., 466, it was held that a railroad company that ran an engine at night, without a headlight, was guilty of negligence, but, as the injured party was aware of its approach notwithstanding the absence of the headlight, there was no proximate connection between the negligence and the injury. The fact that there was no such connection did not change the character of the omission from an act of negligence to one of due care. It was impossible to relieve the company from the charge of negligence—that was apparent, incontestable, and continuous—but it was possible to relieve it of liability upon the ground that it was shown not to have been the proximate cause of the disaster.

In *McCown v. Muldrow,* 91 S. C., 523, 74 S. E., 386, Ann. Cas., 1914-A, 139, the Court said: "There was testimony tending to show that the defendant was driving his automobile when the injury was sustained at a rate of speed greater than was allowed by the ordinance of the city; and

this was evidence *per se,* and not merely *prima facie,* of negligence. In *Whaley v. Ostendorff,* 90 S. C., 281, 73 S. E., 186, the Court says: 'When evidence * * * is only *prima facie,* it is subject to rebuttal, but, when there is negligence *per se,* it is conclusive of that question. The fact that there is negligence *per se* does not, however, tend to show that such negligence is actionable. The question whether negligence is actionable depends upon the further question whether such negligence was the direct and proximate cause of the injury."

Another reason for holding the charge erroneous is this: The jury was justified under the trial Judge's construction of the ordinance in concluding that the deceased violated the terms of the ordinance; or, if that question was open, there was evidence upon which they would have been justified in that conclusion. In either event, under the rule announced in the *McBride case,* the violation was not only negligence *per se,* but it carried with it the presumption that it was at least *a* proximate cause of the collision. Not only this, but, under the rulings of this Court, the failure to perform a statutory duty justifies the submission of the issue of willfulness to the jury and the imposition of punitive damages, in the absence of a valid defense.

With the presumptions attaching to the violation of the ordinance, the burden was upon the plaintiff to exculpate the deceased from those presumptions, by evidence. This presented an issue for the jury upon the question of proximate cause, and it was erroneous to set up a standard, which the charge did, by which the jury should determine this issue.

In *White v. R. Co.,* 30 S. C., 218, 9 S. E., 96, a crossing case, the Circuit Judge, upon the question of the plaintiff's contributory negligence, charged the jury: "A man might lie down on the track and rely upon being warned of the approach of the railroad train by the sounding of the whistle or the ringing of the bell; whereas if the law did not en-

join specifically those precautions on the part of the railroad company, the man might be guilty of negligence, and would not [?] be on the lookout when he knew he was approaching a railroad crossing."

The Court, in declaring this charge reversible error, stated: "It seems to us that the Judge invaded the province of the jury, when he presented to their minds the state of facts mentioned as a standard for their government in determining the question whether or not gross negligence by plaintiff was present in the case before them. Suppose the injury complained of by the plaintiff had happened under a state of facts like those mentioned by the Judge, would it not have been error for the Judge to have stated to the jury that this did not amount to gross negligence? Would not such a statement have been an invasion of the province of the jury? We think so. Suppose that the testimony below had shown that the plaintiff, after driving upon the track of the railroad, had deliberately stopped and remained thereon, relying upon the ringing of the bell or the sounding of the whistle to warn him of the approach of the train, would the Judge have been warranted to charge either that this did or did not amount to a gross negligence, such as would inculpate the plaintiff or exculpate the defendant? Certainly not, because such a charge would tave taken from the jury the very question at issue, a question of fact, to wit, whether gross negligence was absent or present. For the same reason we think the charge under discussion was erroneous, its tendency being to hamper the jury in its unquestioned right to determine the question at issue for itself."

In *Pickens v. R. Co.*, 54 S. C., 498, 32 S. E., 567, the Court said: "It was error to charge that certain facts constituted negligence, when there were other facts brought out in evidence relative to this question."

In *Edwards v. R. Co.*, 63 S. C., 271, 41 S. E., 458, the defendant requested a charge to the effect that certain con-

duct on the part of the plaintiff would constitute contributory negligence. The request was declined, and this Court held properly so. If so, the Court could not charge, as the trial Judge did in the case at bar, that certain conduct would not constitute a proximate cause, as much a question of fact as the contributory negligence of the plaintiff; in fact, an essential element of it.

In *Garrick v. R. Co.,* 53 S. C., 448, 31 S. E., 334, 69 Am. St. Rep., 874, the Court said: "He could not instruct the jury that any given state of facts would constitute negligence, either contributory or otherwise, for that was a question for the jury to determine, under all the facts and circumstances of the case."

In *Toale v. Tel. Co.,* 76 S. C., 248, 57 S. E., 117, the Court held that a request to charge that exposure to cold and rain was the result of plaintiff's own act and not the proximate result of the defendant's negligence was upon the facts. See, also, *Norris v. Clinkscales,* 47 S. C., 489, 25 S. E., 797; *China v. Sumter,* 51 S. C., 453, 29 S. E., 206; *Tolbert v. Tel. Co.,* 83 S. C., 68, 64 S. E., 862, 916; *Carolina Co. v. Mill Co.,* 98 S. C., 476, 82 S. E., 679; *Allen v. Davis,* 125 S. C., 256, 118 S. E., 614; *Powers v. Rawls,* 119 S. C., 134, 112 S. E., 78.

For these reasons, I think that the judgment should be reversed.